March 15, }
  1927.   }

## OPINION OF THE JUSTICES.

An occupation tax, so-called, which places charges upon various vocations, avocations and ordinary transactions of business and private life which contain no element subject to supervision either under the police power or as things affected with a public use is the imposition of a charge upon the exercise of a common right and is unconstitutional.

Singling out corporations and taxing them upon privileges, while permitting other holders of like privileges to go tax-free, is a discrimination not permitted by the constitution; hence if the franchise to do business is taxed to corporations, the right to do such business must also be taxed to individuals engaging in the same business.

And such a tax against corporations alone could only be laid upon the difference between the value of the right to do the specified business as a corporation and the value of the right to do the same business as an individual or as an association other than a corporation.

The power to impose a charge for the grant of a franchise is justifiable not as an exercise of the power of taxation but of the power to grant special privileges upon condition.

The constitutional amendment of 1903 is not an extension of the right to tax estates; the original grant of the taxing power exhausted the subject of estates as an object of taxation, and the amendment gave authority to enter upon new fields of taxation.

An income tax is a levy upon the receipt of property and not upon the property or estate so received; and a tax upon estates and a tax upon incomes being wholly different in their nature cannot by fixing a common rate be correlated so as to produce one equal and proportional tax; but the constitutionality of a tax upon incomes rests not upon impossible proportional correlation but because taxes incapable of such correlation were authorized by the amendment of 1903. An income tax at a fixed rate is constitutional.

All taxes of a given class must be laid at a common rate and hence in the taxation of incomes the rate must be uniform.

A provision in an income tax law exempting incomes up to $2000 is constitutional as a proper exercise of the legislative power to determine what classes of property shall be taxable.

And so, for the like reason, of a provision that all of one class of income should be taxable and that as to another class only income above a stated amount should be taxable.

Inequality of taxes laid is forbidden, but inequality caused by taxing some property and not taxing other property is permitted.

Within the limits of the discretion given by the constitution to the legislature as to the selection of the proper subjects of taxation the authority of the legislature is supreme.

On February 16, 1927, the house of representatives passed the following resolution:

WHEREAS two acts are now pending in the house of representatives which contemplate important changes in the taxing system of the state, namely, House Bill No. 180, An Act to provide for General Revenue for the State of New Hampshire and the Municipalities Thereof, to be known as the General Revenue Bill, and House Bill No. 300, An Act (a) to repeal paragraph 1, section 14, chapter 60 of the Public Laws, relating to the taxation of stock in trade, (b) in amendment of chapter 65 of the Public Laws, relating to the taxation of income from intangibles, and (c) providing for the taxation of incomes from manufacturing and mercantile business carried on within the state:

*Resolved*, That the speaker of the house be and hereby is directed to obtain from the justices of the supreme court their opinions upon the following questions of law which are of serious importance to the financial welfare of the state, namely:

1. Would any constitutional provision be violated by imposing privilege taxes at varying fixed rates on persons engaged in some or all of the vocations, occupations or businesses specified in said House Bill No. 180, as proposed in said bill?

2. If question 1 is answered in the affirmative could such privilege taxes constitutionally be levied —

(a) At a uniform fixed rate upon all business thereby affected, instead of varying rates for different businesses, or

(b) At either varying rates or a uniform rate upon corporations engaged in such businesses, as a method of taxing their franchises, to the exclusion of individuals and unincorporated bodies so engaged?

3. Would any constitutional provision be violated by imposing a tax at a fixed rate on net incomes derived from manufacturing and mercantile business carried on within the state, as proposed in said House Bill No. 300?

4. If question 3 is answered in the negative —

(a) Is it constitutionally necessary that such fixed rate be single and unvarying, as proposed in said bill, or could the rate of taxation be graduated according to the amount of the net income derived by the taxpayer from such business?

(b) Is it constitutionally necessary that the rate of taxation and the amount of income exempt from taxation be the same for net income derived from such business and for income derived from intangibles, as proposed in said bill: or could net income derived from such business be taxed at one fixed or graduated rate, and income derived from intangibles be taxed at a different fixed or graduated rate,

or at the average rate of general property taxation as now provided in chapter 65 of the Public Laws?

(c) Would any particular provision of said House Bill No. 300 violate any constitutional provision, so far as it is practicable for the justices to return a reasonably prompt answer to this inquiry?

The following answer was returned:

*To the House of Representatives:*

The undersigned, justices of the supreme court, make the following answer to the inquiries propounded in your resolution of February 16.

I. House Bill No. 180 appears to have been drawn without any reference to the structure of our state government, and contains many provisions which could not be applied here. Its main purpose seems to be to establish a system of charges upon various vocations, avocations and acts. It deals largely with what are commonly known as occupation taxes. Section 3 divides these subjects of proposed taxation into one hundred and eighteen separate classes, each with one or more schedules of stated charges. Many of the occupations or acts thus sought to be levied upon involve only the ordinary transactions of private life. They contain no element subject to supervision either under the police power or as things affected with a public use.

The mere statement of the general proposition is sufficient to show that it unquestionably exceeds the legislative power. *State* v. *Company*, 60 N. H. 219. Even in jurisdictions where excises are authorized, the power to lay them does not extend to the imposition of a charge upon the exercise of a common right. *O'Keeffe* v. *Somerville*, 190 Mass. 110.

II. A. Making the price levied by the excise uniform would not meet the constitutional objections to the proposed act. Rate is but one of the essentials of a tax in this jurisdiction. *Opinion of the Justices*, 76 N. H. 609. Except in the case of the tax upon polls, taxes are required to be laid *ad valorem*. Rate and value are both essential elements of a valid tax. The provision for laying excises, contained in the constitution of Massachusetts, was omitted from that of New Hampshire. *State* v. *Company*, 60 N. H. 219, 249. "There is no warrant for the imposition of any other tax than one assessed upon a proportional and equal valuation of all the different kinds of property on which it is to be levied." *Ib.*, 246. *Amoskeag Mfg. Co.* v. *Manchester*, 70 N. H. 336. No authority has been given to prescribe "an arbitrary imposition of specific taxes upon the objects named." *Opinion of the Justices*, 76 N. H. 588, 596.

The constitutional amendment of 1903 did not abrogate or modify
this feature of limitation upon the power to tax. "It seems clear
that the people must have understood that they were called to
vote upon a question of taxation so related at least to property taxa-
tion as to lead to the understanding, no special exception being made,
that the rules with which they were familiar in taxation of that
character were to be applied so far as possible." *Williams* v. *State*,
81 N. H. 341, 349.

II. B.   The second division of your second inquiry involves power
to tax franchises, not only in a general way, but also a detailed applica-
tion to the one hundred and eighteen specifications of section 3 and
the added ones found in later sections.   No bill presenting the form
of legislation proposed, to which an answer to this inquiry could apply,
has been submitted.

Broadly speaking, a tax cannot be imposed upon a corporation
which would not be upon an individual similarly circumstanced.
The power to tax franchises, granted in express terms in the amend-
ment of 1903 (Const., Pt. II, *Art.* 6), has reference to rights which may
be considered to be property.   The phrase "other classes of property,
including franchises" admits of no other meaning.

It is settled that in this state the power to be a corporation is not ·
an irrepealable right.   It can be taken away at any time, and without
compensation.   *Dow* v. *Railroad*, 67 N. H. 1.   Because of this, it
might seem doubtful whether it could be considered to be property, in
the constitutional sense of the term, so far as to be taxable under the
grant of power contained in the amendment of 1903.   But while
the mere right to be a corporation is held by an uncertain tenure, yet
the practical fact that it is very seldom interfered with may be suffi-
cient, taken in connection with other features of the right, to permit
such a franchise to be treated as property within the meaning of that
term as used in the grant of the taxing power.

"The word 'franchise' . . . has various significations, both in a
legal and popular sense.   A corporation is itself a franchise belonging
to the members of the corporation; and a corporation, being itself
a franchise, may hold other franchises, as rights and franchises of the
corporation." *Pierce* v. *Emery*, 32 N. H. 484, 507.   The franchise
to be a corporation, is to be distinguished from the franchise to do
certain things.

A franchise, or right to do certain things, giving a power to enter
upon transactions which is not possessed by the people as of common
right, is property.   It cannot be taken away, except for a public use

and upon compensation made. *Piscataqua Bridge, Propr's of,* v. *New Hampshire Bridge,* 7 N. H. 35, 66. Such a franchise is taxable under the amendment of 1903. Whether it was not also taxable before that amendment was adopted is not material to the question now under consideration.

The franchise or privilege to do certain things may be granted to a corporation, an unincorporated association, a partnership, or an individual. *Opinion of the Justices,* 66 N. H. 629, 642. A tax laid upon it is subject to the constitutional rules of proportionality and reasonableness which apply to all taxes. *Williams* v. *State,* 81 N. H. 341. If the privilege is taxed when held by a corporation, it must be when exercised by collective owners associated together under some other form of agreement, or by an individual. Singling out corporations, and taxing them upon privileges, while permitting other holders of like privileges to go tax free, is a discrimination not permitted by the constitution.

"The rule placing 'natural persons and corporations precisely upon the same ground' of general liability to legislative control, is 'the only one upon which equal rights and just liabilities and duties can be fairly based.' *Thorpe* v. *Railroad,* 27 Vt. 140, 145. A railroad corporation is 'put in the same position a natural person would occupy if engaged in the same or like business. Its rights and its privileges in its business of transportation are just what those of a natural person would be under like circumstances; no more, no less.' *Stone* v. *Company,* 116 U. S. 307, 329. This is an application of the equitable principle that the corporate fiction does not operate beyond the purpose of its introduction." *Dow* v. *Railroad,* 67 N. H. 1, 30.

If the bare franchise to be a corporation is to be considered as property, and therefore taxable, it could be taxed only upon an *ad valorem* basis. The valuation would necessarily be confined to an appraisal of the worth of the power to be a corporation, as distinguished from the power to do certain business. As before stated, if the franchise to do business is taxed to corporations it must be to others in like circumstances. The tax as against corporations only could be laid only upon the difference between the value of the right to do the specified business as a corporation and the worth of the right to do the same business as an individual, or under some other form of organization. *Bartlett* v. *Carter,* 59 N. H. 105. A tax laid upon corporation franchises as such, must be limited to a levy upon the value of the right to be a corporation, as distinguished from a right to do certain things.

To prevent misapprehension, it may be well to add that charges made for the grant of corporate capacity, or for its continuance, are justified upon other grounds than the exercise of the taxing power. As the grant could be withheld, it may be given conditionally.   The same rule applies to all grants of special privileges.   The extent of the power is well illustrated by the flowage law, as it existed in its earlier forms.   That law did not even reserve the charge laid for the benefit of the state.   It was imposed for the benefit of the landowner whose property was taken by the dam owner under the power of eminent domain.   Payment was required, not only to the extent of the value taken, as required by the constitution (*Woolworth Company* v. *Berlin, ante,* 153), but also in the amount of fifty per cent in addition thereto.   P. S., *c.* 142, *s.* 16.   Attacks upon this feature of the law were unavailing.   "The statute is permissive.   It confers a pr vilege which the defendants were at liberty to exercise or not as they saw fit.   But they cannot take and enjoy the benefit without performing the condition on which it is given."   *Dow* v. *Company,* 68 N. H. 59, 60.

As before stated, the power to impose conditions upon grants is not to be treated as a power to tax, as taxation is understood in this jurisdiction.   The mere fact that the condition may be imposed for the benefit of a private party is sufficient to show that the charge is not a tax, since taxes can only be laid for public purposes.   *Perry* v. *Keene,* 56 N. H. 514.

Because the foregoing reasons convince us that the plan of taxation proposed by House Bill No. 180 is not constitutional, it has not been deemed necessary to examine the long list of occupations, etc., which the bill declares to be privileges, or to attempt to ascertain the validity of such a classification.

III.   House Bill No. 300 provides for the taxation of certain incomes at a fixed rate, and your inquiry relates to the validity of the rate provision.   This involves the consideration of the nature of an income tax, as compared with the annual estate tax, with a view to ascertaining whether the two are alike in every element which is involved in the determination of the quantity of taxation.   It is already settled in this jurisdiction that the mere fact that the tax is to be computed by multiplying value by a rate does not, in and of itself, show that the tax is proportional to another tax which is computed by the same process.   The decision that inheritance taxes are disproportionate to annual estate taxes (*Thompson* v. *Kidder,* 74 N. H. 89) disposes of any such contention.

One other element must always be taken into consideration. When and why are the taxes imposed? The incidence of the tax, as well as the amount of a single imposition thereof, is an indispensable factor in the consideration of the problem of the equality or inequality of the tax, when compared with another. To create a proportional tax "equality and uniformity were essential characteristics of every process which could be included under the term taxation." *Williams* v. *State*, 81 N. H. 341, 350.

It is here that equality ceases, as between the annual taxation of estates and the taxation of incomes when received. The former is a regularly recurrent tax, depending for its annual incidence upon the existence of the property. The latter is imposed only when the prescribed event occurs, no matter how long the property continues to exist. Estates are taxed once a year. Incomes are taxed whenever they move.

Depending as they do upon such widely divergent provisions for incidence, it is impossible to so correlate them as to produce one equal and proportional tax.

The object in requiring the use of a common rate is to insure the imposition of a proportionate burden. If such use will not lead to that result, because of an essential difference in some other factor of the problem, then the use of the common rate is not required. The mere fact that the common rate can be used is not enough to prove that it must be.

This reasoning has always been applied to the tax upon polls. For generations poll taxes were laid at the local rate and upon an arbitrary "valuation" of polls, which the legislature varied from time to time. *Amoskeag Mfg. Co.* v. *Manchester*, 70 N. H. 336, 347. But they never had such a relation to the tax upon estates as to require any such procedure. "Within the constitutional restrictions that all taxes must be proportional and reasonable, the persons who should be taxed for their polls, and the relation between the poll tax and the tax upon estates, rests in the discretion of the legislature. . . . The constitution . . . recognizes two classes of taxpayers — those paying upon polls and those upon estates." *Amoskeag Mfg. Co.* v. *Manchester, supra,* 346, 347.

In the application of this principle, the amendment of 1903 gives recognition to other classifications of taxability. That amendment is not an extension of the right to tax estates, but a grant of the power to tax in other ways. This is the foundation upon which the decision in *Conner* v. *State, ante,* 126, rests.

Before the adoption of the amendment, the power to tax estates was all inclusive. Because of this fact, it was held that the grant of power to tax "other classes of property" gave authority to enter upon new fields of taxation. The original grant exhausted the subject of estate as a source of taxation. The new grant was of something else. The generative source of the tax was to be different. That difference is one of kind, and not of degree. A new element enters into the incidence of the tax.

The annual tax is a burden placed upon ownership. No inquiry is made as to when the property was obtained, or whence it came. The income tax is a levy upon the receipt of property, and continued ownership does not subject it to a recurrence of the tax. It involves a different kind of taxability, and is to be treated as distinct from the estate tax. Like the poll tax, its relation to the estate tax rests in the discretion of the legislature.

It is said that the inherent lack of proportion between an annual tax upon estates and one upon inheritance lies in the fact that one tax is annual and the other at uncertain periods; and it is suggested that as to incomes there is no such uncertainty, that if they are taxed at uniform periods equality is possible and practicable. But it is an entire misconception of the transaction to call the income tax an annual one in the sense of something recurring annually year after year. It never recurs. The event occurs but once and the tax is imposed but once. The mere fact that the tax-gathering period is divided into annual parts has no effect on the amount of the tax. The tax would be the same whether levied annually, monthly, or once in ten years.

Division of the levying periods by years could be applied to inheritance taxes, just as well as to income taxes. In the case of each class one tax and one tax only is levied. Whenever the prescribed event occurs the tax is imposed. Property which becomes income today may do so again next week, or it may not for a generation. You pay one tax upon your income, while you pay a yearly tax upon your estate. The essential difference between the two forms of incidence was deemed to be so self-evident when the inheritance tax was under consideration that it was disposed of in a single sentence declaring that the disproportion was inherent in the nature of the tax. "All the decisions agree, as was held in effect in *Curry* v. *Spencer,* that an inheritance tax is not a proportional distribution of public expense upon the property of the taxing district." *Thompson* v. *Kidder,* 74 N. H. 89, 93.

It has been declared that the equality of the constitution is a practical one. It is not necessarily satisfied by applying a mathematical formula to essentially differing situations.

To say that taxation in part upon the corpus of estates and in another part upon income only is a means whereby a proportional tax is laid upon all, simply because all are computed at a common rate, is as indefensible as the plan proposed some years ago (and declared invalid) to tax growing timber upon a percentage of its value. *Opinion of the Justices*, 76 N. H. 609.

Taxation of incomes is permitted, not because such taxes can be correlated with annual estate taxes, but because taxes incapable of such correlation were authorized by the amendment of 1903. Such taxes being authorized, their lack of logical and practical relation to the estate tax is not a reason for declaring them invalid. *Conner* v. *State, ante,* 126; *Thompson* v. *Kidder, supra.* Neither is there occasion to limit the use of the new grant of authority by concluding that where a seeming correlation can be effected it must be adopted, although the substance of proportionality would still be lacking.

This conclusion is not in conflict with the advice, given by the majority of the justices to the legislature of 1915, that the taxation of interest and dividends as estate must be at the same rate as that upon other estates. *Opinion of the Justices*, 77 N. H. 611, 616. That advice was based upon the proposition that such a tax could be supported under the original constitution. It was treated as a tax upon estate. So treated, the conclusion announced necessarily followed.

But the decision in *Conner* v. *State, ante,* 126, establishes the construction of the amendment of 1903 to be that power has been granted to tax incomes independently. "The incidence of the tax is to be determined by some fact other than mere ownership. This is illustrated by the named class of inheritances. These are property, and taxable each year as estate. They are taxed annually because of ownership. They are made subject to another tax for another reason." *Ib.*, 128, 129.

The further suggestion in the opinion of the justices above referred to that as to taxes not specifically named in the amendment ("income taxes or taxes of that nature") the rule as to proportionality with estate taxes must be applied (*Ib.*, 616) was made without discussion of what was meant by the term "other classes of property" as used in the amendment. It having been determined in *Conner* v. *State* that the phrase had reference to something differing essentially from

an estate tax, and that an income tax was within its scope, the idea that such tax must be made proportional with the estate tax is no longer tenable.

As before suggested, there is no occasion to search here for some fine distinction, or apparent but unsubstantial logic, upon which the suggested limitation upon the power to tax incomes could be sustained. The whole object of these constitutional limitations is to create some kind of equality in the distribution of the cost of government. Whether this object is better obtained by the early practice under the constitution which had some reference to ability to pay, or the later one of requiring that all taxes, except upon polls, be determined by taking the same percentage of value from all who were required to contribute, is immaterial to the present question. All have agreed that the equality sought is a practical one. But when one man is taxed upon the corpus of his estate and another upon his income only, "the practical proposition that the taxes are out of proportion is unanswerable." *Conner* v. *State, ante,* 126, 131. A power to vary the rate, as between the two, is not a power to create disproportion where proportion existed before. It is our opinion that an income tax at a fixed rate is constitutional.

IV. A. and B. The rule is firmly established that all taxes of a given class must be laid at a common rate. This rule applies to annual taxes upon estates (*Opinion of the Justices,* 76 N. H. 609) and to inheritance taxes. *Williams* v. *State,* 81 N. H. 341, 351. The reasoning in the case last cited leads to the conclusion that the principles there enunciated must be applied in the taxation of incomes. The rate must be uniform.

IV. C. The question of the power to except a fixed amount of a class of property from taxation is also presented. By the terms of section 2 of the bill, net income of merchants and manufacturers in excess of $2,000 is taxable, and $2,000 of the income from intangibles is exempt from taxation by section 23. It has been questioned whether the term exemption is properly used in this connection, and the suggestion has been made that the form used in section 2 is the more appropriate. *Nashua Sav. Bank* v. *Nashua,* 46 N. H. 389, 395. The terminology used does not control. The substance of the provision must be considered.

The question is one of power to grant exemption. The exercise of that power is not to be defeated by the fact that the exemption will create inequality of taxation. Such inequality is the necessary effect of every exemption. *Canaan* v. *Enfield,* 74 N. H. 517, 537,

538. Exemptions are justified as "an exercise of some of the other powers which provide for the common benefit, protection, and security, and which may be conveniently grouped under the name of the protective power." *State* v. *Company*, 60 N. H. 219, 257.

That there is power to exempt from taxation either by omitting a class of property "from the list of taxable estate or by expressly excluding it therefrom, cannot be denied." *Canaan* v. *Enfield*, *supra*, 541. The issue here is whether the proposed exemption comes within the reasons upon which the exercise of the power depends.

The real grounds of the present exemption appear to be those stated at the argument. The recipient of the small income is not in a position to pay, and the exemption tends to promote thrift. The question thus presented is whether such reasons can justify legislation limiting liability to taxation. That they have practical merit is undeniable. But that is not sufficient, if the constitution forbids such action.

So far as the practice under the constitution, and the decided cases go, they tend to sustain the conclusion that there is power to act in this way.

Exception from taxability, because of the amount of property involved, has been provided for in this state for nearly a hundred years. It is coincident with the first statute providing for a general appraisal of property for taxation. Laws 1833, *c.* 108. In this instance it applied to savings bank deposits of $100 or less. The validity of the provision was put upon the ground of failure to tax. They were not included in the list of what was taxable. "I can have no doubt that the intention was . . . to encourage and favor small deposits in savings banks by relieving them wholly from the burden of taxation, leaving them to stand in this respect on the same footing with other large classes of personal property, which are not liable to be taxed because they are omitted from the list of taxable articles." *Nashua Sav. Bank* v. *Nashua*, 46 N. H. 389, 396.

Another case calls attention to several such statutory provisions and states the reason for sustaining them as follows: "The general object of all these exemptions is to promote the prosperity and welfare of the state. The policy is justified on the ground that the advantages arising from the exemptions largely exceed the disadvantages due to the inequality in taxation introduced by them, so that, upon the whole, the public good is promoted." *Petition of Union &c. Savings Bank*, 68 N. H. 384, 387.

In the *Opinion of the Court*, 4 N. H. 565, the power of the legisla-

ture to select the subjects for taxation is illustrated by the instance of the poll tax statute. "A tax of a particular sum, upon every poll in the state, might be easily laid, and would be, in one sense of the term, a proportional tax. But no person would suppose, that such a tax would be just and reasonable. No one would think, that the polls of children, in their earliest infancy, or of idiots and distracted persons were proper subjects of taxation." *Ib.*, 570.

The reason for the distinction there sanctioned, the incapacity of infants and idiots to pay, as contrasted with that of men of mature years and sound mind, is much like that in the present instance.

Exemptions for a term of years, for the encouragement of manufacturing and other enterprises, date from 1786. *State v. Company*, 60 N. H. 219, 259. Doubts as to the validity of such enactments were created, or increased, by what was said and left unsaid in the *Opinion of the Court*, 58 N. H. 623. See also *Opinion of the Justices*, 70 N. H. 642. In cases where the invalidity of the statute would have been decisive, the point has been passed over, without comment, invalidity of the exemption for other reasons being found in each instance. *Cox Needle Co. v. Gilford*, 62 N. H. 503; *Boody v. Watson*, 63 N. H. 320; *Portsmouth Shoe Co. v. Portsmouth*, 74 N. H. 222.

In Massachusetts, the validity of the discrimination created by exemption has been put upon the same ground that the exclusion of more general classes of property from the taxing list is upheld here. Such has been the practice, substantially from the beginning of the state government. *Day v. Lawrence*, 167 Mass. 371.

At a later time, and in an advisory opinion, the exemption of small incomes was said to be justified because "It is proper that one's income, to a reasonable amount, should be treated as necessarily consumed for the support of himself or of his family, so that only the excess above such amount should be regarded as property increasing his ability to pay taxes." *Opinion of the Justices*, 195 Mass. 607, 610.

A general exemption is a law. A special exemption is a gratuity, or a contract made by authority of law. A general exemption is a part of the state policy of taxation. It is an exercise of the power of classification and may be changed at any time. *Brewster v. Hough*, 10 N. H. 138; *Franklin Street Society v. Manchester*, 60 N. H. 342. A special exemption is a favor granted to a particular party. If it contains the essentials of a contract, it cannot be impaired. *Opinion of the Court*, 58 N. H. 623.

It is as to special exemptions only that the element of some promotion of the public good, by the exercise of the protective power, is

required. As to general exemptions, there is no limitation of the legislative power, save those applying to all classifications of property as taxable or non-taxable. If the distinction made is a reasonable one, in the sense that it may be deemed to be just, it is sufficient. *Opinion of the Court*, 4 N. H. 565, 569, 570. Pertinent applications of this test are found in the inheritance tax. Nearness of relation to the decedent was held to furnish "good reasons why the passing of property . . . should not be subject to an exaction by the state." *Thompson* v. *Kidder*, 74 N. H. 89, 97. In 1913 the legislature were advised that in the taxation of money at interest, the line might be drawn in favor of money loaned upon local real estate mortgages at a rate not exceeding five per cent. *Opinion of the Justices*, 76 N. H. 609.

In view of the foregoing, we now incline to the opinion that the general provision that incomes up to $2,000 shall not be taxed while those above that amount shall be, is a proper exercise of the legislative power to determine what classes of property shall be taxable.

A provision that all of one class of income should be taxable and that as to another class only income above a stated amount should be, presents a more difficult question. Such legislation approaches a step nearer the line which divides reasonable classification from unreasonable discrimination. Sanction for such procedure may be found in the practice before referred to of providing specific exemptions of fixed amounts as to certain classes only of property taxed as estate. If those provisions are valid, the conclusion seems to follow that a provision making incomes from trade and manufacture taxable *in toto*, and those derived from intangibles taxable only as to that part which exceeds a certain amount, are also valid.

The exemption of money at interest at a five per cent rate, if the security was a local real estate mortgage, did not make illegal the taxation of money loaned at the same rate, when unsecured, or when secured by a chattel mortgage, or when loaned at a higher rate. As money at interest could be thus classified, and one part made taxable while the other was not, it appears to us that incomes may be so classified for any just reason. And in describing the limits for the taxability of one class of income it is not essential to use all the boundaries set up for another class. *Citizens' Telephone Co.* v. *Fuller*, 229 U. S. 322, 332. If there is such a difference between the two classes that one could be taxed and the other left tax free, it would seem to follow that a legitimate exception might be made applicable to one and not to the other, whenever a just ground for distinction exists.

The cases discussing the constitutional guaranties of equal rights and impositions of equal tax burdens deal very largely with questions of double taxation, the meaning of the term estate, equality of valuation and uniformity of rate. They have little or no concern with the exercise of the selective power of the legislature. What is said in those cases as to equality and proportionality is to be read in the light of the subjects then under consideration. It does not necessarily apply to the extent of a selective power, any exercise of which must result in inequality of tax payment. Inequality of taxes laid is forbidden, but inequality caused by taxing some property and not taxing other is permitted. As to the relation of one part of a tax to another, the rule of proportion is a mathematical one. Two things are there required, an equal valuation and a uniform rate. *Opinion of the Justices*, 76 N. H. 609. But in the determination of what shall be taxed the rule is disregarded. This is necessarily so.

It is very likely true that a more complete attainment of justice in the distribution of the tax burden, in the exercise of the legislative power of selection, could be reached if the discretion allowed were greater than it is. If, for example, the taxation of certain property on a percentage of its value, or at a lower rate, could be adopted, the result might be more just than either taxing it on full value or excepting it from the list of taxable estate. But since this is not permitted, the more primitive method has to be used. In this situation, the fact that there may be something of injustice in the plan adopted does not prove that it is forbidden.

The reasons which may justify the use of the selective power as to the subjects for taxation may be as various as the motives which induce any rational action. The caution expressed a hundred years ago, that taxes must be laid not only proportionally but also in due proportion (*Opinion of the Court*, 4 N. H. at *p.* 569), has reference to something besides a problem in mathematics. In that exact science, nothing is added to proportion by saying that it is due proportion. The meaning intended is that a just reason must exist for the selection of the subjects for taxation. When it can be seen that there are reasons for the action taken or proposed which may fairly be thought to be of that class, the court has no power to decide that the action cannot be taken. The case then is simply one described in that opinion. "To establish the rules by which each individual's just and equal proportion of a tax shall be determined, is a task of much difficulty, and a very considerable latitude of discretion must

be left to the legislature on the subject. . . . And this discretion has always been exercised by the legislature.

Within the limits of this discretion, as to the selection of proper subjects of taxation, . . . the authority of the legislature is, without question, supreme." *Opinion of the Court*, 4 N. H. 565, 570.

The problem of legislative power to make quantitative exceptions from taxability is a difficult one. There are substantial arguments for either view. There are difficulties in attempting to define limitations, if the power is thought to exist. It is manifestly impossible to give the subject adequate consideration in the time that can be taken before an answer to your inquiries must be returned. But it has seemed to us to be in conformity with the duty laid upon us by the constitution to express to you such tentative views on the subject as we now have, with a repetition of the caution that the opinion given is not a judicial decision of the questions propounded.

> ROBERT J. PEASLEE,
> LESLIE P. SNOW,
> THOMAS L. MARBLE,
> OLIVER W. BRANCH.

March 15, 1927.

With the opinion of the justices advising that House Bill No. 180 is unconstitutional I agree. With the opinion advising that House Bill No. 300 does not conflict with the constitution I also agree, except in regard to the special rate of taxation for incomes. In my opinion the legislature has no power to subject incomes to any different rate from that laid on general property.

The question is one of construction, and we are called upon to say what we think the people meant in the language they used in the 1903 amendment to the constitution. This ascertainment of their intention as expressed and embodied in that language is to be determined in the light of the situation then existing.

The constitution provides that "full power and authority are hereby given and granted to the said general court . . . to impose and levy proportional and reasonable assessments, rates and taxes, upon all the inhabitants of, and residents within, the said state; and upon all estates within the same." Constitution, Part II, *Art.* 5.

"Taxation as understood here when the constitution was amended [1903] meant equal treatment to every one and meant, when property was the basis or measure of the tax, a uniform rate, and it was also

understood that equality and uniformity were essential characteristics of every process which could be included under the term taxation." *Williams* v. *State*, 81 N. H. 341, 350.

The requirement that taxes shall be proportional was not repealed by the 1903 amendment, but remained in force without change. And it is not questioned that the new subjects of taxation which the amendment authorized are each controlled by the unamended and continued requirement of equality, so far as their nature permits. The decided cases of *Thompson* v. *Kidder*, 74 N. H. 89; *Williams* v. *State*, 81 N. H. 341, and *Conner* v. *State, ante,* 126, all hold that the amendment made no abridgment or exclusion of the equality requirement in its application to the new fields of taxation which the amendment opened, except to the extent necessary to make the amendment operative and effective. Equality was demanded after the amendment as much as before, unless the amendment by necessary implication called for its disregard. "It was understood, in 1903, that additional powers of taxation were being granted, and that existing constitutional limitations, necessarily in conflict with the new grant, were to be disregarded." *Conner* v. *State, supra, p.* 129. "Whatever disproportion is necessarily created . . . is permitted." *Ib., p.* 131. "The conclusion seems irresistible that in 1903 it was understood additional power of taxation was being granted and, no special exception of existing constitutional provisions being made, only such provisions can be disregarded as are necessarily in conflict with the power granted." *Williams* v. *State, supra, p.* 350.

It thus appears that no argument can be maintained that because taxes authorized by the 1903 amendment require elements or features of disproportion in certain respects, the equality clause of the constitution is not generally or otherwise applicable to them. On the contrary equality is demanded except in such particulars and respects as do not permit it. It is the rule, and not the exception. While subject to exception, the exception is limited to the necessity for it.

The question is here presented whether an income tax is inherently of such a nature that to give it its constitutional scope, equality as between it and the general property tax is to be ignored. May the equality test be applied to the general classes or groups of taxable subjects in their relation to each other, as well as in relation to the different kinds or divisions into which any general class or group may branch? And specifically, may there be correlation and co-ordination as between the general property tax and the income tax? That the doctrine of equality is to be applied mutually among

the groups as well as separately as to each group considered by itself, if it may be, is not understood to be questioned. Whether or not it may be is to be considered.

Argument is made that because general property and incomes are inherently different in nature, a common measure of their taxation is inherently impossible. And the argument is sought to be reënforced by applying the rule as to inheritance taxes as not only analogous but as also parallel to income taxes. No question of the validity of the premises involved in this argument is made. Much that is said in the minority opinion of *Opinion of the Justices*, 77 N. H. 611, as to the character of an income right in contrast with general property has been adopted in *Conner* v. *State, supra,* and that incomes are taxable only under the 1903 amendment, and not as general property, is not now open to argument. Nor is the law as established by *Thompson* v. *Kidder, supra,* that inheritances by reason of their nature are not subject to the general property tax rate doubted. But the conclusion that the inherent difference between incomes and general property is such as to prevent them from being subject to a common and equal tax rate is regarded as an arbitrary declaration rather than as a logical deduction.

In *Thompson* v. *Kidder, supra,* it was held impossible to assess an inheritance tax in proportion. But the case does not hold that the impossibility arises from the mere fact that an inheritance is a different class of property from an "estate," the constitutional word for general property. The distinction between the right to receive particular property by inheritance and the right to the property as its owner when received is more philosophical and speculative than practical. In either view the value of the right is measured by the value of the property. The right to inherit particular property takes effect on a particular event, it is instantly exercised, and the fact of its existence and exercise at once and thereby changes it into a right of ownership. And as commonly and generally understood in a popular sense, inheritances relate at least as much to the ownership of property inherited as to the right to become the owner of such property. The momentary right thus to acquire property has the effect of immediate termination of the right by its translation into the right of ownership. As soon as the heir becomes the owner of property inherited, the property is a part of his estate and taxable as such.

Since property may be taxed because its owner inherited it and since it is taxable to that owner as general property as soon as the

inheritance takes effect, it follows that the constitution as amended permits the double taxation of such property for all practical purposes. If the incidence of inheritance as to particular property happens to take place a number of times in a given period for the taxation of general property, the disproportion becomes all the greater. A piece of property successively charged with a tax for each event of its inheritance during a normal tax period and also taxed as general property for that period necessarily is taxed out of proportion to a similar piece of property not thus inherited or inherited a less number of times during the period. So that even if the inheritance tax rate and the general property tax rate were made the same, the disproportion would remain general and substantial. The incidence of the tax for any normal tax period is in the nature of things uncertain and irregular, and so as to make proportion with the general property tax actually impossible. The inheritance tax is assessed on the full value of the property, and reducing the disproportion would not affect the substantial and inherent character of the tax as disproportionate. It would be a change of degree but not of character.

Moreover the authority generally to tax inheritances as an expression of the popular will to obtain a new source of revenue meant adoption of the general understanding which prevailed at the time of the amendment that such taxation implied special and independent rates. It was a form of state rather than local taxation, and its isolation from, rather than connection with, the taxation of general property was obviously in the contemplation both of the framers of the amendment and of the people who adopted it.

It is therefore regarded that the court in *Thompson* v. *Kidder, supra,* held an inheritance tax impossible of proportion with the general property tax by reason of its inherent nature, on practical rather than technical grounds.

The situation in regard to the taxation of incomes as authorized by the 1903 amendment is different in important and substantial respects from that in regard to the taxation of inheritances. It had then been definitely decided that inheritances could not be taxed without amending the constitution. *Curry* v. *Spencer,* 61 N. H. 624. There was at the same time much doubt if and how far incomes were taxable. The tax history of the state showed this both in practice and in court decisions. The removal of the doubt was one purpose of the amendment, and its effect in subjecting incomes to taxation as a class of property other than "estates" is clear and unquestioned, as already stated. But while authority to tax incomes

meant that they should bear some part of the burden of public expense, it did not mean a restoration of the early practice of taxation in proportion to income rather than in proportion to value. The purpose of the amendment was to add to the subjects of taxation, and not to affect already existing subjects. It was not a displacement or change, but an extension, and an undertaking to spread the range of taxation with all possible equality. If equality as between general property and income might be applied in substantially the same way as it was applied as between different classes of general property, it was to be done. . Such is believed to be a fair statement of the intent of the amendment. That the income tax rate may be more or less than the general property tax rate is, it is considered, not shown merely because incomes are not estates or merely because an inheritance tax from its nature cannot serve its full constitutional scope under the rate for general property.

It is true that incomes have certain similarities to inheritances. Incomes are strictly incidents of property rather than the property itself, and relate to events rather than ownership, as is set forth in the minority opinion in *Opinion of the Justices*, 77 N. H. 606. But this comparison between incomes and inheritances and the contrast between them and property owned does not prove either that proportion between them and general property may not be observed in taxing them or that the 1903 amendment intended that proportion should not be thus observed if it might be. As stated in the minority opinion just cited, "It is at once conceded that the people might provide in their constitution for the use of both measures [of amount and possession as to general property and of amount and time as to income] in laying taxes; that is, there might be classification of property, rights, and privileges for the purpose." The opinion admittedly went no farther than to advise that incomes were not to be treated as general property and made taxable as such, and it is of course to be conceded that if the amendment had in terms provided that incomes should be taxed at the same rate as general property, the clause would have validity and binding force. In the general constitutional provision that taxes shall be proportional it would seem that the requirement had been made as definitely as though such suggested terms had been expressed if to do so does not destroy or impair its purpose. What is implied is no less a part of any words, oral or written, than what is expressed. And since the scope of the amendment is to be restricted by equality if it may be done without weakening its purpose, ascertainment of its purpose is called for.

Income, as to the person receiving it, may in a general way be regarded as the birth of property. Its source may or may not be other property. It may be the earnings for work or service as well as the earnings of other property, and it may come from a combination of the two sources. As soon as it is received it is property in ownership. After its receipt the owner either spends it or keeps it. More income is spent than kept, and men in general save but a small part of their income. If the owner keeps it, it becomes a part of his general property and is taxable as such. It can be taxed only once because it either ceases to exist or becomes merged into general property. The value of the income right is measured by the amount of income received during the period. Income derived from other property in a normal period is in general experience small in comparison with the value of the property and is roughly in average with the normal rate of interest for the use of money.

These elementary considerations call for mention only for their bearing on the understanding of the people in their adoption of the amendment. Whatever technical definement of income is to be made, the popular will was that property received as income should be subject to a tax because it was thus received. That such property was thereby and for that reason to be only separately classified in respect to equality was not, however, intended if, notwithstanding its inherent and distinctive characteristics, equality in correlation with the general property tax might also be applied.

A house, a horse and an income may be each conveniently, effectively and practically taxed at the same rate. The house and the horse must be. Why not also the income? It is true the income may not be on hand at the taxing date, but if it was in hand during the taxing period, that is, since the last preceding taxing date, its postponement of taxation to the date of taxing the house and the horse presents no difficulties. Effectiveness and equality are thus both maintained and preserved. It is also true the income thus taxed may not be retaxed as such. That is immaterial. The house may burn and the horse die.

In inheritances the right comes casually and by the accident of another's death. It comes once, or more than once, or not at all, in a given tax period. This uncertainty of incidence inevitably spells disproportion. But in incomes the right comes definitely and only once in each tax period. If taxed as thus accrued, a proportionate tax with general property does not make the tax ineffective. Nor does such a tax fall short of the purpose of the amendment, unless dis-

proportion was intended, as to which there is no satisfactory evidence.

That the income may vary in different periods is also immaterial. So may one's general property. And that the owner may have no income in some periods may also be said as to his general property. Certainty of the incidence, rather than duration, meets this test of correlation.

A stock in trade bears substantial analogy to the income right. As taxed no particular item of a stock in trade is valued, but the average value for the tax period is assessed. The particular stock varies and shifts and as itemized property may not be at all or only in small part on hand to be taxed more than once. If the stock is perishable in character, its limitation as identical property to one tax is especially manifest. That other property of the same kind may take its place so as to keep the stock continuous does not mean that the same property is retaxed. Different property of the same kind is successively taxed. In comparison, one's income may be continuous in the sense that an income is received in successive tax periods, though a particular income in the sense of the right to receive particular earnings can have no continuous or extended duration. Stocks in trade have always been treated as estates and comparable as to equality with other forms of estates. It would seem that an income right may in general be treated from this standpoint of a single and temporary exercise in the same way as a stock in trade, not taxed as to the items making it up but on a figure representing its average value for the tax period, and with the items wholly or largely changed in the next period. In other words, the stock in trade tax involves the use of the element of time as well as of quantity to measure its value the same as in the case of incomes.

If federal law permitted patents to be taxed, a question as to which no opinion is expressed, the constitution by virtue of the amendment would permit their taxation as a class of property other than estates. As a right in the nature of a privilege or license, a patent would not be classed as general property. But it would manifestly be subject to equality with general property in its taxation, and this again shows that the mere fact of difference in classification as between property owned and in other forms does not prevent the application of equality as between the classes.

As the constitution as amended stands, both a rented building and the rent therefrom may be taxed. Both a bond and the interest thereon may be taxed. If the building and the rent, or the bond and its interest, may be taxed at different rates, then the constitutional

guaranty of equality which the people in 1903 thought they were saving was practically swept away in large and important areas of ownership.    If the income in such a case may be unlimitedly taxed, the effect is not only to place a heavy burden on the income but indirectly on the property from which it is derived as thereby made unproductive.

A proportionate income tax controls and restrains such a result while a disproportionate one at least opens the doors for it.    That the people, at all times expressing their will to enforce equality so far as possible, intended to permit such a situation does not seem a reasonable conclusion if any other can be drawn.    While the constitution requires reasonableness as well as proportionality, yet the legislature is its own judge of what is reasonable within all possible limits, and if proportion is not required, then disproportion cannot be regarded as unreasonable, whatever its results.    To say that the legislature is not likely to pass such legislation does not answer the question of its constitutional authority to do so.    And this power to tax separately both property and the income derived from it, rather than being proof of power to tax them without relation, tends to show the purpose of restriction in relating them with a common rate.

It is conceded that some disproportion cannot be avoided.    To the extent income is saved and thus merges into general property, there may be double taxation on the property as income and on it as owned.    But this disproportion is slight, unimportant, and comparatively negligible.    It is limited and restricted, and not general. As to a given income, double taxation happens but once at most, since an income is only once capable of taxation as such.    And as already stated, an income is small in amount as compared with the value of any property from which it is derived, and also is usually wholly or largely spent without becoming taxable to its recipient as property owned.    Necessary disproportion is one thing, and that which is unnecessary another.    And some limited unavoidable measure of disproportion does not prove a purpose of a general disregard of proportion.    In the separate consideration of incomes among each other some slight disproportion is encountered, and as is said in *Conner* v. *State, supra, p.* 132, such a "situation is a necessary incident to the imposition of an income tax; and authority to deal with it in a reasonable way goes with the power to lay such a tax."

The argument that the income tax is in nature comparable with the poll tax seems deserving of little merit.    A poll is of such an unrelated character that there is no standard for determining its value.    Be-

cause there is no standard all polls may be given a uniform and the same value.  The legislature may accordingly place any value on a poll that it sees fit in reason.  It is therefore immaterial whether it places a prescribed value on a poll to be taxed at the general rate or fixes the amount of the tax on it from which a value may be computed.  In either case its assessment of the value of the poll, direct in the former and indirect in the latter, is an incidental exercise of its constitutional power to tax polls.  But an income right is measured strictly and only in value by the income received, and is on all fours with general property in this respect.  The legislature may no more determine the value of an income than it may of a given class or piece of property.  While it may place a uniform value or the same amount of tax on all polls, it may not do so as to incomes.

It is argued that an income tax may be assessed out of relation to the times for assessing estates.  Assuming that this is so, it is not perceived how it proves anything.  Whether a tax is laid on an income as accrued in a normal tax period or as accrued in a shorter or longer period, the net result is the same, aside from the negligible factor of variation in the tax rate if the rate is made to conform to the general property tax rate.  The tax on an annual income amounts to the same as the total of separate taxes on each portion of an income received in any prescribed divisions of a year, and a tax levied only once in a number of years amounts to the same as the total of annual taxes levied on the respective income of each year of the number.  Alteration of the period necessarily alters the value of the income for the period, and since no particular income can be taxed as such but once and must be taxed on its value, the final result in taxing it is the same as in the employment of an annual period.  It is said that the tax would be the same, however often or infrequently levied.  This concedes that an annual tax is no more and no less productive than on some other periodic basis, and it follows that practical comparison and adjustment with estate taxes is not thereby frustrated.

If it is intended to be claimed that the right to levy an income tax at other than annual periods carries with it the right to make a special rate because there is no tax on general property except once a year, the answer is that the legislature may if it sees fit levy the general property tax at other than annual periods.  There is no constitutional objection to its so doing.  Correlation is not disproved because the legislature may adopt a course which results in disproportion.  The question is whether it has power so to do.  The argument assumes that because an income tax has been authorized without the express

limitation for the tax period therefor to be uniform with that for general property, inherent inequality is proved. The answer is that the periods may be correlated, and there is no inherent difficulty in making them so. The assumption begs the question because it assumes a possible basis for inequality as though it were authorized, when the question is whether any basis productive of inequality is authorized.

No one can say that the present income tax law with the same rate as that of the general property tax has not been operative and effective to produce substantial revenue with slight cost of collection and facility of administration. That there may be a practical correlation between an income tax and the general property tax seems self-evident. It is far greater than in the case of the inheritance tax in its capacity to produce revenue with a rate nearly twice as high for the latter. In its practical working there is nothing to show that there was any general understanding that income taxes were independent of general property taxes, as inheritance taxes were, when the amendment of 1903 was adopted. When experience has demonstrated that the equality test is of possible application in a practical way, with substantially as much correlation as between different kinds of general property, the fallacy of the argument that equality cannot apply by reason of inherent differences between incomes and general property would appear also to be demonstrated.

These considerations show that the income right is much more closely allied with ownership than the incidence of inheritance. The distinctions make an altogether different situation and call for its treatment as a supplementary rather than independent subject of taxation. The gulf of separation is so narrow that it may be readily bridged, whereas as to inheritances, the gulf is too wide. The elements of incompatibility which arise from the nature of inheritances are serious and substantial, while those arising from the nature of incomes are unimportant and slight, in making adjustment by way of coördination. Practical application does not result in such adjustment as to inheritances, while it does as to incomes. And popular understanding is to be tested by practical notions and workings of things.

It is recognized that the question presents difficulties and that opposing views have weight and force, if they are not persuasive and prevailing. But with full consideration of them it is believed that technical distinctions and legal theories of refinement do not guide to the ascertainment of the meaning of the amendment as to its scope

and limitations.  Definitions and rules are far from conclusive to show intent and meaning.

The difficulty lies in a clear understanding of the extent of the limitation intended to be placed on the new grant of power given by the 1903 amendment.  Considered broadly and in summary, retention of the equality clause of the constitution meant its application to the amendment when application was reasonably practical without destroying the purpose and effectiveness of the amendment.  Proportionality was thus to be applied to each new subject of taxation.  That has been decided.  That it should also be thus applied in correlation would seem to have been as much intended.  That it was in the people's mind that equality should apply as between different classes and kinds of estates but not as between estates and other forms of property should be shown by more than the mere fact of such difference.

Equality, as already stated, was then an accepted doctrine firmly established.  Its force and extent in general application was well understood.  And its retention was well understood.  The new subjects of taxation were understood to be under its restriction.  That it was understood that the restriction was not to apply in the relation of the old and the new subjects as between each other should not be held as an arbitrary exception or on technical grounds.  If the popular will as expressed by the amendment can be given practical validity and effect without disregard of the equality test, it should be.  That the people understood that while property as owned should be treated on a proportionate basis and while income should be thus treated, yet the proportion might be disregarded as between them, seems an unnecessary distinction contrary to a practical and reasonable construction of the amendment.  And it is believed that the demand for equality to be applied when it may be should be determined in the light of practical considerations, as the standpoint of those whose language the amendment is.  Equality being required if it may be applied, and it being shown that as a practical matter it may be except in unimportant details without destroying the purpose of the amendment, disregard of it would seem a disregard of the constitution.  Its order is that what can be done in applying equality shall be.

JOHN E. ALLEN.

*Fred C. Demond* (by brief and orally), for the New Hampshire Manufacturers' Association.