March 2,
 1937.

## OPINION OF THE JUSTICES.

*To the House of Representatives:*

The undersigned, Justices of the Supreme Court, furnish this answer to the inquiries submitted by your resolution of February 12.

Your first four inquiries are directed towards House Bill No. 385, providing for a retail sales tax.

1. In our opinion such a tax may be validly imposed. Its propriety on constitutional grounds was discussed in *Opinion of the Justices*, 84 N. H. 559, 575-577, and we agree with the conclusion there reached that "a tax upon sales made within the state would be constitutional." The tax being upon "the transmission of property in a distinctive way," it is immaterial whether it be placed upon the seller or upon the purchaser.

By the bill the tax is placed upon the purchaser. Although the seller is required to guarantee, collect, account for, and pay it, he is also required to add it to the price of the article sold and may not assume or absorb or refund it. The duty thus devolved upon him to act as the collector of the tax without adequate compensation for the service a majority of us believe would be in derogation of due process as a confiscatory deprivation of his rights of equality. It would

504

not be a service incidental to the ascertainment of his own taxes.

The situation is not parallel with that of distributors of gasolene and other motor fuels who are required to pay the tax thereon although it is in finality a tax against the ultimate consumer. Such distributors must be licensed (P. L., c. 104, s. 1), and their duty to pay the tax is therefore a term of the license.

The bill has been drawn with House Bill No. 386 relating to an income tax in mind as accompanying legislation. There is some indication that the tax is placed by the bill upon the purchaser under the influence of the view expressed in *Opinion of the Justices, supra,* 577, to the effect that a tax upon sales would bar one "upon the sales profits of the same class of taxpayers." We believe the view is erroneous.

The reason assigned was an assumed result of double taxation. Our consideration reaches an opposite conclusion. An income tax upon sales profits is upon the amount of the excess of receipts over expenses. A sales tax, like any other expense of business, is reflected in the net profits by a reduction therefrom. No part of the profits includes any part of the tax. The incidence of transmission of property in a sale is unrelated to that of income. "The income tax is a levy upon the receipt of property, . . . It involves a different kind of taxability, and is to be treated as distinct from the estate tax." *Opinion of the Justices,* 82 N. H. 561, 568. Likewise, it is not a form of a sales tax, and connection by which it depends upon or relates to a sales tax is not perceived. Income may be produced through the use of property taxed. In like manner it may come from sales taxed. In either event the tax on income is not invalidated.

In the ordinary conduct of business a sales tax charged to the retailer is passed along to the purchaser by an increase of the price of the article sold. That being done, sales profits are unaffected. From the standpoint of income a sales tax is an item of cost like the stock in trade tax or any other tax the burden of which the seller's business bears.

It is accordingly our conclusion that although both sales profits taxes, as a form or part of an income tax, and sales taxes are levied on property, the events or incidences required for their imposition are unrelated and lead to no duplication of taxation in the constitutional sense.

If the bill were redrafted so as to place the tax on the retailer, the objectionable feature of his status as a tax-collector would be eliminated.

Section 16 of the bill provides for an entitled arbitrary assessment. One in fact arbitrary may not be sustained, and the information on which any assessment is based should be reliable and in the commission's judgment provably true.

Section 22 vests the commission with authority to demand information from the retailer of about every conceivable sort and to search his place of business. The section will be construed to authorize no unreasonable searches (Const., Pt. I, *Art.* 19) and to require no one to furnish evidence against himself tending to show guilt of crime or offense. (Const., Pt. I, *Art.* 15).

2. The exemptions of sales of gas, water and electricity when delivered by conduit or wire may be properly made. The element of service is involved in all of them, as is also their subjection to special public regulations of price. Except as furnished by the public they are supplied by utilities. The public interest that their prices be reasonable is a just reason for their classification as exemptions.

The exemption of gasolene and other motor fuels already taxed by the state appears to be required as well as proper. The present tax upon them is not a sales tax, but a charge for their use in motor vehicle highway travel. *Tirrell* v. *Johnston*, 86 N. H. 530, 536. The state's interest is to obtain "a uniform return for the use of highways." *Ib.*, 537. But if the charge in legal definition is a toll and not a sales tax, it has practical equivalence with a sales tax. Although the distributor is the party directly liable to pay the charge, he is required to add it to his price and pass it along to the retailer who in turn must collect from the consumer. Whatever the difference in methods of computation between the charge and the sales tax, the consumer pays according to the amount he buys. The event of transmission of property is the same for both forms of tax. It would therefore be a violation of the principle of equality to levy a sales tax on the transaction in addition to the charge for highway use.

3. The adoption of a tax rate differing from the average rate throughout the state is proper. Our differences of opinion upon the propriety of a special rate for an income tax do not extend to that for a sales tax. This tax is regarded by all of us as one which cannot be correlated and made uniform with the average of the general property tax. It is paid before the average rate can be ascertained, and disproportion is inevitable. And a majority of us believe that the special rate is also sustainable on the grounds for the validity of a special rate for an income tax which a majority of the court expressed in *Opinion of the Justices*, 82 N. H. 561.

4. Our answer to this inquiry is to be found in our subsequent discussion of House Bill No. 387, relating to the property tax reduction fund. The proceeds of the sales tax, by the bill providing for it, are to be a part of that fund, and your inquiry 9 is directed to the validity of the bill providing therefor.

Your inquiries 5 to 8 inclusive pertain to House Bill No. 386, relating to taxation of incomes.

5. In its general plan and program we find no unauthorized exercise of the taxing power. The subject of income taxes was dealt with in *Opinion of the Justices*, 82 N. H. 561, 570 *et seq.*, and in *Opinion of the Justices*, 84 N. H. 559, 571-574. In the theory and view there taken of their nature and character as a form of a property tax based on elements other than of ownership, possession or enjoyment, we concur. In some specified details or applications of the bill objection on constitutional grounds may perhaps be well taken. Such an outcome would not invalidate the act in its entirety if its general purpose can still be given effect. *Opinion of the Justices*, 76 N. H. 601, 605.

In respect to certain details, by section 5 income from rents is a taxable item. We think the rents must be only those derived from property within the state. *Opinion of the Justices*, 84 N. H. 559, 573.

By section 5 (f) pensions and retirement allowances are deductible from gross income. Except so far as they are non-taxable by force of the federal constitution, their deduction presents a serious question of disproportion. Retirement allowances, as deferred payments for services, seem particularly subject to the objection. A majority of us see no proper ground for their special classification as exemptions.

Section 11 relates to corporate income. In our opinion that of unincorporated bodies should be included within its terms and treated in the same manner.

We note the authority of the Tax Commission, by section 27, to require the production of writings. What we have said concerning the commission's similar authority in the administration of the sales tax is applicable to this section.

By section 33 a tax may be levied against one who has removed from the state during an income year. Such removal would spell the loss of the state's jurisdiction over him personally, and unless the tax in such case is made as a charge and lien against his property in the state at the time of the assessment, we think it would be void.

6. A majority of our number agree with the conclusion of a majority of the justices in *Opinion of the Justices*, 82 N. H. 561, 566-569, that a special tax rate laid on incomes differing from the average property tax rate in the state is proper.

7. The bill proposes that the proceeds of the tax be distributed according to House Bill No. 387, relating to the property tax reduction fund. Our answer to this inquiry will be found in our later discussion of that bill.

8. In *Opinion of the Justices*, 84 N. H. 559, 571, the members of the court expressed this view: "The ground upon which a substantial quantitative personal exemption is here sustained is that the exempted party is too poor to pay. It does not seem to us that a person having an income of $2,000 can be said to be so poor that he ought not to share the expense of government with his fellow citizens, so far as the excess of his income over $2,000 is concerned. As to that excess, he cannot justly be considered to be entitled to public charity. He is not so poor that his normal tax upon that excess ought to be abated because of his poverty . . . .

". . . we are of opinion that an exemption of $1,200 to a single person without dependents is as large as could in reason be thought to be valid under the principle limiting the exercise of this power. We also think that reasonable men might conclude that the principle would permit a larger exemption for those with families or dependents, but that this idea cannot be used to raise the largest exemption to a sum exceeding $2,000."

Subject to the possible exception of additional reasonable allowance according to the number of dependents, we hold the same opinion.

9. The provisions of House Bill No. 387 appear to be within constitutional permission, with slight qualification.

The right of the state to use revenue derived from taxation in relief of pauperism is undoubted.

In *Opinion of the Justices*, 84 N. H. 559, 577-582, thorough and thoughtful consideration was given to the question of the propriety of payments by the state to towns and cities to compensate them for the loss of tax revenue through the legislature's classification of certain kinds of property as non-taxable. With the reasoning and views then elaborated we agree. Accordingly, the proposed payments to towns and cities to replace the loss of revenue by reason of a repeal of the law taxing live stock and stock in trade are deemed to be within constitutional authority of the legislature.

Whether a town or city suffering from an overburdensome tax rate may be aided for that reason, provided it has prudently managed its affairs, is more doubtful. But our view is that so far as any of its tax revenue is used to meet the charges of public matters assigned to it by the legislature to perform, in distinction from those of a strictly local nature, the aid may be extended.

It is in the constitutional philosophy of our state that "economy" is "a most essential virtue in all states" (Const., Pt. I, *Art.* 36), and the state's interest to encourage, foster and secure efficiency and economy in local government is a proper public purpose. *Amyot* v. *Caron, ante,* 394. As said in *Opinion of the Justices,* 84 N. H. 559, 580: ". . . state aid to relieve the burdens put upon some towns and not upon others, or put upon towns in differing degree or amount, may be granted by the legislature. If the burden put upon the town is one the legislature may rightfully impose, relief therefrom by an appropriation of state funds is permissible." Relief from the burden of highway maintenance, the maintenance being a public rather than local undertaking of government, may therefore be extended to a hard pressed town or city. Generally, if state relief lessens the local expense of administering a function of the state government, it is proper. But unless such an expense is incurred, the aid would seem to disregard the rule of equality. The legislature has no taxing power to raise state money, or to require a town or city to raise money, to aid another town or city unless the aid is in some degree of benefit to the state or municipality extending it. *Keene* v. *Roxbury,* 81 N. H. 332, 334; *Opinion of the Justices,* 84 N. H. 559, 579. It is therefore our view that section 11 of the bill may not become valid law without the qualification that the aid be applied towards matters of state interest assigned to the town or city to administer.

The denial of aid to a town or city unless its affairs have been conducted prudently is not thought to be unduly discriminative. The state's interest in local prudence justifies the condition.

10. In respect to House Bill No. 388 a majority of us perceive no constitutional conflict with section 1. As heretofore stated, in *Opinion of the Justices,* 82 N. H. 561, a majority of the justices advanced their view that a specially fixed rate of taxation on incomes would be valid, and a majority of us are in accord with that view.

While the state collects it, the tax is local. By the existing law (P. L., *c.* 65, *s.* 31) its proceeds are distributed in such manner that a town or city receives all the tax which its residents pay, less its share

of the collection expense. The variations in local tax rates among the towns and cities lead to a higher or lower rate than the rate for this tax in nearly all instances. The result is that the taxpayers of a town or city pay taxes at different rates according to the nature of the tax. A majority of us think this circumstance does not constitute inequality or disproportion. "The public charges of government" (Const., Pt. II, *Art.* 6) which may be raised by taxation include local as well as state expense, and local taxes are controlled by the same constitutional principles with which state taxes must be in conformity. If the tax were collected locally, it would be as valid as when the state collects it.

Sections 2 and 3 present a point of serious doubt, in respect to dividends of an incorporated or unincorporated body. They provide that if their net income becomes taxable by the state, there shall be no tax on dividends they pay if their earnings are derived principally from business within the state. We assume that it is meant that if more than half the earnings are derived from local business, they are principally so gained, and otherwise not. It follows that if the local earnings of such a body do not exceed half the entire earnings, all the dividends paid by it will be taxed, while if the local earnings of another such body are more than half its entire earnings, even slightly so, its dividends will not be taxable. We see no just ground for such a classification and the principle of equality appears to be disregarded.

In *Conner* v. *State*, 82 N. H. 126, the exemption of corporations from paying a tax on dividends it received was justified on the ground that if they were taxed on them, stockholders taxed on dividends received from a corporation whose income was thus acquired would be doubly taxed. The double taxation is no less when the corporation's dividends are paid out of its business earnings. This was the view of the justices in *Opinion of the Justices*, 84 N. H. 559, 573. We think the new exemption proposed by the bill should be modified so that only dividends or parts of them attributable to local earnings shall be tax exempt when such earnings are taxed.

Also, in respect to unincorporated bodies, an improper discrimination appears to be made in the taxation of dividends paid by them when they are taxed on their local business. By the bill the dividends of an unincorporated local body are not taxable when its earnings are locally taxed, while those of one not local are. This difference should be eliminated, and there should be uniformity in this matter as between incorporated and unincorporated bodies.

The provisions of the bill for exemptions and abatement are considered valid. The reasons justifying exemptions from other kinds of income may be invoked to support them.

11. We see no constitutional objection to different uses of tax revenue from different taxes. So long as the use is a proper one, allocation to a particular use of a part or all of a general or special tax is in the legislative discretion.

12. House Bill No. 389 relates to the taxation of legacies and successions. No ground upon which its enactment into law can be questioned as unconstitutional occurs to us.

13. We believe that an exemption of a fixed and more than nominal amount of the value of all estates from the tax on legacies and successions, if adopted as an amendment to House Bill No. 389, would be void. We assume that by value is meant value available for distributees. The exemption would amount to no taxation of a part of the distribution. If a part of a legacy or succession is taxed, all of it must be. A difference in value or amount is not a ground for classification unless there is a just reason for it. *Opinion of the Justices*, 82 N. H. 561, 570, 575. No reason which may be regarded as just is perceived.

The operation of the exemption would lead to arbitrary benefits and burdens. If there were only one distributee, he would have an exemption wholly out of proportion to that of a number of distributees in another estate. And in one estate a distributee receiving a sum or share equal to the amount of the exemption would be taxed if the value of the estate were large enough to make the exemption inapplicable to such sum or share, in contrast with a distributee of an estate limited in value to the amount of the exemption. A haphazard inequality thus results. The exemption is so closely akin to a case of disproportion that any distinction seems untenable.

If the amount of the exemption were taxed at some rate different than that for the unexcepted part of the distribution, the invalidity would be equally clear. It would be a part of a progressive tax, which cannot be levied. *Williams* v. *State*, 81 N. H. 341. To wholly exempt a part and to place one rate on it while subjecting the remainder to a higher rate, stand alike, in respect to legacy and succession taxes. Reasons for exemptions of amount in income and other taxes as discussed in *Opinion of the Justices*, 82 N. H. 561, 570-575, here fail.

14. In our opinion House Bill No. 390 proposing to classify live stock and the stock in trade of retailers, mechanics and manufac-

turers as non-taxable calls for no unauthorized exercise of legislative power. The aid to farming and industry to be furnished by excepting such property from taxation tends to further the state's general welfare, and a just reason thus supports the bill as a protective measure. *Opinion of the Justices,* 82 N. H. 561, 573; *Opinion of the Justices,* 87 N. H. 490.

JOHN E. ALLEN.
THOMAS L. MARBLE.
OLIVER W. BRANCH.
PETER WOODBURY.
March 2, 1937.     ELWIN L. PAGE.