Request of the House of Representatives
No. 86-097

## OPINION OF THE JUSTICES

May 1, 1986

The following resolution was adopted by the House of Representatives on March 5, 1986, and filed with the Supreme Court on March 6, 1986:

"Whereas, there is pending in the House, House Bill 30, 'An act amending the business profits tax'; and

"Whereas, an amendment has been proposed to HB 30; and

"Whereas, doubt has arisen as to the constitutionality of the provisions of said bill as amended; and

"Whereas, it is important that the question of the constitutionality of said provisions should be settled in advance of its enactment; now, therefore, be it

"Resolved by the House:

"That the Justices of the Supreme Court be respectfully requested to give their opinion on the following questions of law:

"1. Would any provision of the constitution of New Hampshire be violated by defining business organizations as members of a 'unitary business' as provided in section 3 of HB 30?

"2. Would any provision of the constitution of the United States or

this state be violated by the provision of section 3 which excludes certain corporations from the definition of 'water's edge combined group' contingent upon the taxpayer's agreement to certain conditions?

"3. Would any provision of the constitution of New Hampshire be violated by the provision of section 4 of HB 30, which provides that the application of the 'water's edge method' or 'water's edge formula' is conditioned upon the taxpayer's compliance with rules adopted by the department of revenue administration or procedural requirements of RSA 77-A?

"4. Would any provision of the constitution of the United States or this state be violated by the provisions of HB 30 insofar as they would include within the definition of income subject to apportionment dividends received by a business organization which is part of a water's edge combined group from sources outside of New Hampshire?

"5. Would any provision of the constitution of the United States or this state be violated by the provisions of HB 30 which would require, or give the discretion to, the commissioner of the department of revenue administration to include in income subject to apportionment, income from sources outside of the 50 states and the District of Columbia?

"6. Would any provision of the constitution of the United States or this state be violated by the provision of section 6 of HB 30 which provides that the commissioner 'may require or permit' a return containing the combined net income of a water's edge combined group?

"7. Would any provision of the constitution of New Hampshire be violated by sections 5 and 6 of HB 30?

"8. Would any provision of the constitution of the United States or this state be violated by any other provisions of HB 30?

"That the clerk of the house of representatives transmit copies of this resolution and HB 30 and the proposed amendment to the Justices of the New Hampshire Supreme Court."

The following answers were returned:

*To The Honorable House of Representatives:*

The undersigned justices of the Supreme Court submit the following answers to the questions contained in your resolution submitted to this court on March 6, 1986. Interested parties were permitted to file memoranda with the court until March 20, 1986.

## I. *Introduction*

The stated purpose of House bill 30-FN is to amend "existing law by limiting the application of the business profits tax to the water's edge by eliminating overseas corporations from subjection to this tax." Enactment of this bill would curtail the State's ability to use the worldwide unitary method of taxation, and implement the water's edge method of taxation. The term "water's edge," with its obvious geographical connotation, refers to the fifty States and the District of Columbia.

Presently, RSA chapter 77-A authorizes taxation of the taxable business profits of business organizations carrying on "business activity both within and without this state." RSA 77-A:3, I (Supp. 1985). This method of taxation enables the State to apportion a "unitary" business's in-state and out-of-state income in an effort "to allocate to this state a fair and equitable proportion of such business profits." *Id.* The apportionment formula allows the State to determine the ratio of a business organization's in-state property, payroll, and sales to its total or worldwide property, payroll, and sales, and to tax the total based on the in-state percentage.

State use of the three-factor apportionment method to accomplish worldwide unitary taxation has withstood constitutional challenge in several United States Supreme Court cases. *See, e.g., Container Corp. v. Franchise Tax Bd.*, 463 U.S. 159 (1983) (due process, commerce and foreign commerce clauses challenge); *Exxon Corp. v. Wisconsin Dept. of Revenue*, 447 U.S. 207 (1980); *Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425 (1980). *Accord Opinion of the Justices*, 123 N.H. 296, 306, 460 A.2d 93, 100 (1983) (the apportionment method "appears to be a reasonable means of allocating business income earned within and without New Hampshire"). In addition, this court has upheld the State's use of the apportionment method to tax out-of-state business profits, *see Scott & Williams, Inc. v. Board of Taxation*, 117 N.H. 189, 372 A.2d 1305 (1977), as well as the State's characterization of a business as a "unitary" one, *see Johns-Manville Prods. Corp. v. Commissioner of Revenue Adm'n*, 115 N.H. 428, 343 A.2d 221 (1975), *appeal dismissed*, 423 U.S. 1069 (1976).

The questions now before us concern the constitutionality of the various amendments to the business profits tax which would implement the water's edge method of taxation. We will address the questions sequentially and, to the extent necessary, separately.

## II. *Questions Presented*

Question one inquires whether "defining business organizations as members of a 'unitary business'" would violate any provision of the

New Hampshire Constitution. Section 3 of House bill 30-FN defines a "unitary business" as "one or more related business organizations engaged in business activity both within and without this state among which there exists a unity of ownership, operation, and use; or an interdependence of their functions."

Two standards are set out in section 3 to determine whether related business organizations comprise a unitary business. The first test, which requires a unity of ownership, operation, and use, was sanctioned by the United States Supreme Court in *Butler Bros. v. McColgan*, 315 U.S. 501, 508 (1942). *Accord Silent Hoist & Crane v. Taxation Div. Director*, 100 N.J. 1, 18, 494 A.2d 775, 784 (1985):

> "Unity of ownership means that the activities outside the tax jurisdiction, together with the in-state activities[,] are owned by the same taxpayer; unity of operation means that there is a centralized executive structure with central purchasing, advertising, accounting and management; and unity of use is found in a centralized executive force and a general system of operations."

The second test, which requires an interdependence of business functions, is also derived from federal common law. *See, e.g., Mobil*, 445 U.S. at 438, 440 (referring to "functional integration, centralization of management, and economies of scale," and characterizing Mobil Oil Corporation as a "functionally integrated enterprise").

These tests have withstood repeated federal constitutional scrutiny, and we think they are sufficient for purposes of the State Constitution. Application of these standards will not illegally classify unitary and non-unitary businesses. *See Opinion of the Justices*, 106 N.H. 202, 205–06, 208 A.2d 458, 461 (1965). Rather than creating an impermissible classification, these standards provide general principles for determining whether a business is unitary; the decision in each case depends on the particular facts.

Moreover, these standards are not unconstitutionally vague or indefinite. Numerous federal and State decisions explicate the factors to be considered in determining the existence of a unitary business. *See, e.g., Container Corp.*, 463 U.S. at 166, 177–79; *ASARCO Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 312–13, 320–22 (1982); *F. W. Woolworth Co. v. Taxation & Revenue Dept.*, 458 U.S. 354, 362, 364–72 (1982); *Exxon*, 447 U.S. at 224–26; *Mobil*, 445 U.S. at 428, 438–42; *Silent Hoist, supra* at 17–25, 494 A.2d at 783–87; *Johns-Manville*, 115 N.H. at 430, 343 A.2d at 222–23.

■ In a memorandum filed with the court, the New Hampshire Association of Commerce and Industry (the association) argues that

section 3 will provide the department of revenue administration with unfettered discretion in determining whether a business is unitary. We disagree. The statutory and common law standards mentioned above, coupled with the right of a business organization to administrative and judicial review, ensure that the department's unitary business determinations will be fair and equitable. *See Scott & Williams*, 117 N.H. at 196, 372 A.2d at 1310. Accordingly, we answer question one in the negative.

Question two inquires whether the provision of section 3 excluding certain corporations from the definition of "water's edge combined group," contingent upon the taxpayer's agreement to certain conditions, violates the State or Federal Constitution. A "water's edge combined group" is defined as "a group of business organizations operating a unitary business." House bill 30-FN, § 3, XV. Included within the group are (a) United States corporations included in a consolidated return for federal corporate tax purposes (with certain exceptions); (b) domestic international sales corporations; (c) foreign sales corporations; (d) United States corporations not included in (a) "with more than 50 percent of their voting stock owned or controlled directly or indirectly by another United States corporation," *id.* § 3, XV(d); and (e) any other business organization, as defined in the statute, "which owns or controls more than 50 percent of another business organization or is owned or controlled more than 50 percent by another business organization." *Id.* § 3, XV(e). The exceptions to the first category are those United States corporations "deriving 80 percent or more of their gross income from sources outside the 50 states and the District of Columbia," provided that the taxpayer agrees to certain conditions. *Id.* § 3, XV(a) (the so-called 80/20 corporations).

Several issues are presented by these provisions. First, the conditions to which an 80/20 corporation must agree are in no way improper. Section 3, XV(a)(1) requires the taxpayer to certify "that transactions conducted between such corporations and other members of the group are on a comparable basis to transactions between other corporations owned or controlled by the taxpayer and any members of the water's edge combined group." States tax interstate and international income because of the difficulty in ascertaining the amount of business income attributable to a given State. The bill's certification requirement attempts to ensure that taxpayers will not be able to avoid State taxation by engaging in non-arm's-length transactions, income shifting or favorable pricing among related business organizations. Such a purpose is reasonable. Section 3, XV(a)(2), which requires the taxpayer to report any adjustments as determined by the United States Internal Revenue Serv-

ice, is also a permissible and necessary mechanism to ensure proper compliance with the State business profits tax law.

The next issue raised by question two is whether the provisions of section 3 excluding 80/20 corporations create an impermissible classification of taxpayers under the State Constitution. N.H. CONST. pt. I, art. 12; pt. II, art. 5; *Opinion of the Justices*, 123 N.H. at 301, 460 A.2d at 97. In effect, we must decide whether a United States corporation deriving seventy-nine percent of its income from overseas sources may be treated differently than a United States corporation deriving eighty percent of its income from overseas sources.

■■ The exclusion of 80/20 corporations from a water's edge combined group results from a policy determination that businesses engaged primarily in international commerce and receiving a predominant amount of income from sources outside the fifty States and the District of Columbia should not be subject to State taxation. The choice of eighty percent rather than seventy-five percent involves an exercise of legislative judgment which critics might consider arbitrary, but we do not think the exclusion is unreasonable. The legislature has broad power to create exemptions from State taxation on a uniform basis, *see Opinion of the Justices*, 123 N.H. at 300, 460 A.2d at 96, and we think this exclusion is such a reasonable exemption. Thus, the exclusion constitutes a permissible exercise of legislative discretion and does not impermissibly distinguish a 90/10 corporation from a 70/30 corporation.

■■ Another issue raised by section 3, XV(a) is whether the exclusion of 80/20 *corporations*, without a like exclusion for other forms of business organizations—*e.g.*, proprietorships, partnerships, business trusts, etc.—with similar overseas income, violates the State Constitution's rule against disproportionate and unreasonable treatment of taxpayers. We have stated that the legislature "must substantially treat *all* business entities uniformly and equally." *Opinion of the Justices*, 123 N.H. at 302, 460 A.2d at 97; *see also id.* at 307, 460 A.2d at 101; *Opinion of the Justices*, 88 N.H. 500, 506, 190 A. 801, 806 (1937) (stating, in regard to a provision on corporate income, that "unincorporated bodies should be . . . treated in the same manner"). The effect of granting an exclusion for 80/20 corporations while including other 80/20 business organizations violates the uniform and equal treatment requirement just mentioned. Therefore, section 3, XV of House bill 30-FN violates part I, article 12 and part II, article 5 of the New Hampshire Constitution.

A further aspect of section 3 which has provoked constitutional challenge is the fifty percent ownership rule in subparagraphs XV(d) & (e). In its comments, the association argues that

"[t]he definition of 'water's edge combined group' further expands the definition of unitary business to include cor-

porations included in a consolidated return and corporations which have more than a 50% stock ownership in another corporation or are owned more than 50% by another corporation. The inclusion of an entity and any portion of its income or property within the definition of unitary business solely based upon ownership is clearly violative of the Due Process clause of the United States Constitution."

The association thus claims that section 3, XV(d) & (e) establishes a per se ownership rule for determining whether a business organization should be included in a water's edge combined group.

■ Section 3, XV states that a water's edge combined group "means a group of business organizations operating a unitary business. The group shall include any of the following business organizations." Section 3, XV(d) & (e) includes the so-called fifty percent business organizations. In our view, section 3 requires an initial determination of whether a unitary business exists; it then requires automatic inclusion in "the group" of, among others, the fifty percent business organizations. The creation of a per se ownership rule would violate federal and State due process requirements. *See F. W. Woolworth*, 458 U.S. at 362. Accordingly, we agree with the association that the fifty percent ownership provisions are unconstitutional.

The constitutional infirmities in section 3, XV of House bill 30-FN are the result of an attempt to include certain business organizations within the definition of a water's edge combined group, while excluding others, without conforming to due process or equal protection requirements. The determination of whether a business is unitary must be made on a case by case basis; it is not susceptible to per se rules. Moreover, any exemptions from a unitary business must be uniform and not result in unreasonable classifications of business organizations.

The list in section 3, XV of included business organizations is a shortened version of the list produced by President Reagan's unitary taxation working group. *See* Dept. of the Treas., *The Final Report of the Worldwide Unitary Taxation Working Group: Chairman's Report and Supplemental Views* (Aug. 1984). The report's list is comprised of the section 3, XV business organizations and, in addition, (1) "[United States] possessions corporations," (2) "companies incorporated in [United States] possessions or territories," (3) "certain tax haven corporations presumed to be part of the unitary business," and (4) "foreign corporations with at least a threshold level of business activity in the United States." *Id.* at 30.

■ In view of the bill's stated purpose, *i.e.*, to eliminate "overseas corporations from subjection to [the] tax," its attempt to exclude these additional companies from the definition of a water's edge

combined group is flawed. The bill, as written, violates both due process and equal protection requirements under the State Constitution. As previously stated, due process of law prohibits per se rules for inclusion in a unitary business, and State equal protection doctrine prohibits unreasonable classifications of taxpayers. The bill fails to clearly identify those business organizations it wishes to exempt; moreover, it includes in section 3, XV(e) business organizations which it presumably meant to exclude, *e.g.*, "foreign corporations with at least a threshold level of business activity in the United States," if they are fifty percent business organizations. A bill which excludes 80/20 United States business organizations, but does not exclude 80/20, non-United States, fifty percent business organizations, unreasonably classifies business organizations in violation of the State Constitution. We answer question two in the affirmative.

We assume, for purposes of answering the remaining questions, that a constitutionally acceptable definition of water's edge combined group—consistent with the purpose of eliminating *overseas business organizations* from subjection to the tax—could be crafted.

◼ Question three inquires whether any provision of the New Hampshire Constitution would be violated by section 4 of House bill 30-FN, which provides that the application of the water's edge formula is conditioned upon the taxpayer's compliance with rules adopted by the department of revenue administration or procedural requirements of RSA chapter 77-A. As previously stated, both worldwide unitary taxation and the water's edge method of taxation are constitutionally permissible. Therefore, there is nothing improper in the commissioner's application of either method provided that the standards and procedures he employs comport with constitutional due process and equal protection standards. We see no reason why taxpayer noncompliance which makes it impossible to use the water's edge method cannot lead to application of the worldwide unitary method of taxation. The purpose of this provision is to provide the commissioner with an alternative method of taxation in the absence of taxpayer compliance with the reporting requirements necessary to apply the water's edge method. Such a purpose is reasonable.

◼ The association argues that the fact that the commissioner "shall not be compelled to apply the water's edge [method]" in the event of taxpayer noncompliance is the sort of unfettered discretionary authority which would violate part I, article 37 of the New Hampshire Constitution. The association's reliance on *Guillou v. N.H. Div. of Motor Vehicles*, 127 N.H. 579, 503 A.2d 838 (1986), however, is misplaced. In *Guillou,* we invalidated a statute which granted power to an administrator without any guidance or stand-

ards. *Id.* at 581, 503 A.2d at 840. Section 4 of House bill 30-FN is in no way analogous; it merely grants to the commissioner the authority to employ one constitutional method of taxation if a taxpayer's noncompliance makes employment of another constitutional method impossible. This grant of authority does not vest unbridled discretion in the commissioner. We answer question three in the negative.

Question four inquires whether any provision of the New Hampshire or Federal Constitution would be violated by the provisions of House bill 30-FN "insofar as they would include within the definition of income subject to apportionment dividends received by a business organization which is part of a water's edge combined group from sources outside of New Hampshire." As we stated in section I of this opinion, formula apportionment and worldwide unitary taxation are constitutional. In *Mobil,* the United States Supreme Court approved the apportionability of "foreign source" dividend income. *Mobil,* 445 U.S. at 435–42. We think the *Mobil* analysis is applicable to apportionment of both "foreign source" and interstate dividends under the State Constitution. Therefore, State taxation of business income in the form of dividends received from out-of-state sources is constitutionally permissible. We answer question four in the negative.

Question five inquires whether the provisions of House bill 30-FN which would require, or give discretion to, the commissioner to tax "income from sources outside of the 50 states and the District of Columbia," violate the State or Federal Constitution. Since the inclusion of overseas income in the calculation of a unitary business's State tax is constitutionally permissible, *see Container Corp.,* 463 U.S. at 159; *Mobil,* 445 U.S. at 425, a legislative grant of power authorizing the commissioner to include such income in the business profits tax is constitutionally permissible. We therefore answer question five in the negative.

Question six inquires whether the State or National Constitutions would be violated by the provision of section 6 which states that the commissioner "may require or permit" a return containing the combined net income of a water's edge combined group. Because the bill seeks to make the water's edge method of State taxation of multi-jurisdictional income the preferred method of taxation, and because section 4 of the bill states that "the commissioner shall determine" a business's tax liability by the water's edge method (absent taxpayer noncompliance with reporting requirements), we think this grant of authority to the commissioner is improper. *See Scott & Williams,* 117 N.H. at 196, 372 A.2d at 1310. We see no reason, consistent with other provisions of the bill, why the commissioner should be able to refuse to permit a return from a taxpayer

seeking to comply with the reporting provisions. Thus, the provision "constitutes an excessive delegation of authority to the commissioner of revenue administration." *Id.* Question six is answered in the affirmative.

Question seven concerns the State constitutional validity of sections 5 and 6 of House bill 30-FN, which amend the apportionment statute, RSA 77-A:3 (Supp. 1985). Section 5, II(a) of the bill would amend RSA 77-A:3, II by subtracting "foreign dividends" from the total gross profits of a business organization, and section 5, II(b) of the bill would amend the apportionment statute by enacting a formula to modify factors relating to included "foreign dividends" from unitary sources.

■■ As a preliminary matter, we note that the bill does not define the term "foreign" as it is used in relation to dividends, property, payroll, or sales. This omission results in a provision—section 5, II—that is vague and indefinite in violation of the State Constitution's due process protections. N.H. CONST. pt. I, art. 15. In the present form of the bill, therefore, we must answer question seven in the affirmative. We note, however, that defining "foreign dividends" is not a difficult task. *See, e.g., Mobil,* 445 U.S. at 435. For purposes of this advisory opinion, we assume the House intended "foreign" to mean "beyond the water's edge."

Section 5 of House bill 30-FN attempts to tax "foreign dividends" under a different formula than the one used for other sources of business income. The formula requires (1) determining a percentage for each dividend payor consisting of dividends paid divided by taxable income which has been computed using United States standards; (2) applying this percentage to the dividend payor's foreign property, payroll, and sales; (3) summing the results in (2) for all dividend payors; (4) adding the result in (3) to the denominators of the combined water's edge group (the numerator will remain the New Hampshire numerator); (5) applying the resulting percentage to the foreign dividends; and (6) adding this amount to the amount of New Hampshire taxable business profits computed pursuant to RSA 77-A:3, I and II(a).

■■■■ This formula attempts to create a partial exemption for foreign dividends. The General Court has the power to create reasonable exemptions from State taxation. *Opinion of the Justices,* 123 N.H. at 300, 460 A.2d at 96. Since the exemption is uniform and applies equally to all unitary businesses with foreign dividends, it does not violate the State Constitution.

■■ Section 5, III of House bill 30-FN provides that when two or more related business organizations are engaged in a unitary business, a part of which is conducted in this State by one or more

members of the group, the income attributable to this State shall be determined by means of the combined apportionment factors of the unitary business group in accordance with paragraphs I and II of RSA 77-A:3. This provision would ensure that a fair apportionment of interstate and international income occurs, and is constitutionally proper.

Section 6 of House bill 30-FN provides for combined reporting by a business organization which is part of a water's edge combined group. The return would contain the combined net income of the water's edge group. This reporting requirement is entirely permissible in view of our approval of the water's edge method, provided that the commissioner's authority to "require or permit" a return is curtailed in accordance with our answer to question six.

Further, the section grants the commissioner the authority to adjust the tax or income of a water's edge group to reach an equitable State tax. This grant of authority is similar to the commissioner's authority under RSA 77-A:3, II, which provides that the commissioner may adjust the apportionment factors or employ a different method "to effect an equitable apportionment of the business organization's business activity in the state." As we held in *Johns-Manville*, 115 N.H. at 428, 343 A.2d at 221, New Hampshire's apportionment method of taxation is constitutionally acceptable. Therefore, we see no constitutional infirmity with this aspect of section 6, IV of House bill 30-FN, which provides for an almost identical grant of authority to the commissioner.

We respectfully decline to address question eight, which inquires whether any other provision of the bill violates either the State or Federal Constitution, in view of the time constraints imposed by the impending conclusion of the legislative session and our desire to provide expedited answers to your specific questions.

III. *Summary*

In summary, and for the reasons stated above, we answer questions one, three, four, and five in the negative, and questions two, six, and seven in the affirmative. The following provisions of House bill 30-FN are constitutionally infirm: section 3, XV; section 5, II; and section 6.

JOHN W. KING<br>
DAVID A. BROCK<br>
WILLIAM F. BATCHELDER<br>
DAVID H. SOUTER<br>
WILLIAM R. JOHNSON

May 1, 1986

*Stephen E. Merrill*, attorney general (*David S. Peck* and *Larry M. Smukler*, assistant attorneys general), filed a memorandum on behalf of the State in support of the constitutionality of House bill 30-FN.

*Hamblett & Kerrigan P.A.*, of Nashua (*J. Michael Deasy* and *Wendy B. Davis)*, filed a memorandum on behalf of the New Hampshire Association of Commerce and Industry in opposition to the constitutionality of House bill 30-FN.