Fernandes v. TPD, Inc.                    CV-99-330-JD  01/07/00
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Carla L. Fernandes

        v.                              Civil No. 99-330-JD
                                        Opinion No. 2000 DNH 007
TPD, Inc. d/b/a/ Lou's
Restaurant, et al.


                            O R D E R


        Carla Fernandes is a former employee of Lou's Restaurant in
Hanover, New Hampshire.  Fernandes brought suit against TPD,
Inc., doing business as Lou's Restaurant ("TPD"), Toby and Pattie
Fried, the owners of Lou's Restaurant, and Maurice Bergeron, who
was Fernandes's supervisor when she worked at the restaurant.
Fernandes alleges claims of sexual harassment, violation of New
Hampshire's Law Against Discrimination, and intentional and
negligent infliction of emotional distress against all
defendants.  She also brought a wrongful discharge claim against
TPD and the Frieds.  Defendants TPD and the Frieds (document no.
5) and defendant Bergeron (document no. 8) move to dismiss all
claims against them pursuant to Federal Rule of Civil Procedure
12(b)(6).  Fernandes objects except as to her claims brought
under New Hampshire's Law Against Discrimination.

## Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In reviewing the sufficiency of a complaint, the court accepts "the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992). In cases involving an alleged violation of a civil right, the court requires "plaintiffs to outline facts sufficient to convey specific instances of unlawful discrimination." Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). Applying this standard, the court will grant a motion to dismiss "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" Garita Hotel Ltd. Partnership, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

## Background

Fernandes began working as an assistant chef at Lou's Restaurant in August of 1997. Her duties were primarily to

2

assist the defendant Bergeron, the head chef, and to substitute for Bergeron in his absence.  Bergeron made comments to Fernandes and other restaurant employees that Fernandes found offensive. Bergeron's comments to Fernandes included calling her a "hairy beaver," which Fernandes interpreted as a reference to sexual organs, suggesting that Fernandes go home to "spread her legs for the old man," and asking if she ever gave her husband a "blow job."  Fernandes claims that Bergeron made comments like these, if not these specific comments, on a daily basis.  She also complains that he made similar offensive comments to other employees in front of Fernandes.

Fernandes complained more than once to Bergeron about his behavior and warned him that he and the restaurant could be sued for sexual harassment.  On at least one of these occasions, Bergeron responded by simulating masturbation.  Fernandes claims that the defendants Toby and Pattie Fried, who owned Lou's, were aware of Bergeron's conduct.

At the restaurant's holiday party in 1997, Fernandes was given a container marked "penis butter" and another marked "boob lube."  Fernandes implies that the Frieds orchestrated this event, although she presents no specific allegations of their involvement in giving her these gifts.  She does allege that the Frieds arranged for another employee to receive a "fake penis"

3

and that Fernandes observed the employee's embarrassment.

Fernandes began to suffer psychologically and physically from the work environment at Lou's, and these problems began to adversely affect her relationship with her husband. Lou's did not have a policy concerning sexual harassment either in its handbook or posted anywhere at the restaurant. Before leaving for vacation in August of 1998, Fernandes indicated to the defendant Pattie Fried that she wanted Fried to address Bergeron's behavior upon Fernandes's return to work. Shortly before Fernandes was to return to work, the defendant Toby Fried called Fernandes and told her that although she was doing a good job, things were not working out and Bergeron would not change his behavior. Fried then terminated Fernandes's employment.

## Discussion

### I.   Sexual Harassment

The defendants move to dismiss Fernandes's sexual harassment claim on the grounds that Fernandes filed suit too soon and that she failed to allege sufficient facts to make out a hostile work environment. The Frieds and Bergeron also argue that they cannot be held individually liable for sexual harassment under Title VII.

A.    Timeliness of Fernandes's Lawsuit

Generally, the EEOC issues a right-to-sue notice after 180 days from the filing of the charge with the EEOC.  See 29 C.F.R. § 1601.28(a)(1).  However, by regulation the EEOC may issue an early right-to-sue notice before the 180-day period has expired if the agency determines that it will be unable to process the charge within the 180-day period.[1]  See 29 C.F.R. § 1601.28(a)(2).  The defendants argue that the EEOC's early right-to-sue regulation violates 42 U.S.C. § 2000e-5(b), which requires the EEOC to investigate all charges of discrimination, and 42 U.S.C. § 2000e-5(f)(1), which requires the EEOC to issue a right-

_____

[1]The regulation reads as follows:

> When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued, and the charge to which the request relates is filed against a respondent other than a government, governmental agency or political subdivision, the Commission may issue such notice . . . at any time prior to the expiration of 180 days from the date of filing the charge with the Commission; provided, that [the proper authority] has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect.

29 C.F.R. § 1601.28(a)(2).

5

to-sue notice after 180 days from the date a charge is filed.[2]

They contend that Fernandes's Title VII claim should be dismissed

because the EEOC issued a right-to-sue notice and Fernandes filed

suit before the 180-day period expired, in violation of Title

VII.[3]

---

[2]The relevant part of § 2000e-5(b) reads as follows:

> Whenever a charge is filed by or on behalf of a person
> claiming to be aggrieved . . . alleging that an
> employer . . . has engaged in an unlawful employment
> practice, the Commission . . . shall make an
> investigation thereof.

42 U.S.C.A. § 2000e-5(b).

The relevant part of § 2000e-5(f)(1) reads as follows:

> If a charge filed with the Commission . . . is
> dismissed by the Commission, or if within one hundred
> and eighty days from the filing of such charge . . .
> the Commission has not filed a civil action . . . or
> the Commission has not entered into a conciliation
> agreement to which the person aggrieved is a party, the
> Commission . . . shall so notify the person aggrieved
> and within ninety days after the giving of such notice
> a civil action may be brought against the respondent
> named in the charge . . . .

42 U.S.C.A. § 2000e-5(f)(1).

[3]Fernandes filed her charge with the EEOC on February 24,
1999. The 180-day period for the EEOC to attempt conciliation
would have ended on or about August 24, 1999. The EEOC issued
Fernandes a right-to-sue notice on May 27, 1999, and Fernandes

Fernandes asserts that the EEOC's regulation permitting it to issue early right-to-sue notices is valid because it is consistent with the explicit language and underlying policies of Title VII. Therefore, she argues, her lawsuit was timely. The parties acknowledge that the First Circuit has not explicitly addressed the validity of the EEOC's early right-to-sue regulation and that other circuits have disagreed on this issue.

The District of Columbia Circuit has held that the early right-to-sue regulation is unlawful under Title VII and that "Title VII complainants must wait 180 days after filing charges with the EEOC before they may sue in federal court." Martini v. Federal Nat'l Mortgage Ass'n, 178 F.3d 1336, 1347 (D.C. Cir. 1999), petition for cert. filed, 68 U.S.L.W. 3368 (U.S. Nov. 29, 1999) (No. 99-908). The Martini court based its holding in part on the EEOC's "express statutory duty" under § 2000e-5(b) to investigate all charges filed. See id. The court reasoned that Congress intended for the EEOC to at least attempt to investigate every charge filed, so the EEOC should not be allowed to abandon an investigation before 180 days have passed. See id. at 1346-47. "Allowing private suits within 180 days eases the pressure on the EEOC to resolve charges informally, thus defeating the

---

filed her complaint in this court on July 19, 1999.

7

explicit congressional policy favoring EEOC-facilitated resolution up to the 180th day." Id. at 1347. Noting that the issuance of a right-to-sue notice effectively terminates the investigatory process, the Martini court concluded that Congress must have intended that the EEOC wait 180 days before issuing a right-to-sue notice. See id. The court also concluded that the legislative history of § 2000e-5(f)(1) indicates Congress intended for complainants to be precluded from filing suit for 180 days. See id. Holding the EEOC's early right-to-sue regulation invalid, the court consequently remanded the case for dismissal.[4] See id. at 1348.

In contrast, the Ninth and Eleventh Circuits have upheld the validity of the EEOC's early right-to-sue regulation. See Sims v. Trus Joist MacMillan, 22 F.3d 1059 (11th Cir. 1994); Bryant v. California Brewers Ass'n, 585 F.2d 421 (9th Cir. 1978), vacated and remanded on other grounds, 444 U.S. 598 (1980). The Bryant court relied mainly on the language of Title VII, noting that "[n]owhere does the statute prohibit the EEOC from issuing such notice before the expiration of the 180-day period." Bryant, 585 F.2d at 425. The court also remarked that it would be a

_____

[4]The court noted that the 180-day waiting period is not a jurisdictional requirement, but nevertheless bars any suit brought before the 180 days have expired, unless equitable considerations warrant an exception. See Martini at 1348.

8

"travesty" to require plaintiffs to wait 180 days for a right-to-sue notice when the EEOC's caseload prohibits it from investigating every charge. Id. The Sims court likewise reasoned that the plain language of § 2000e-5(f)(1) does not prevent the EEOC from issuing an early right-to-sue notice. See Sims, 22 F.3d at 1062. The Sims court emphasized legislative history that indicated the purpose of the 180-day rule was to ensure claimants a prompt remedy, and making a claimant wait 180 days to sue when the EEOC cannot process her charge does not serve the claimant's interests, nor does it comport with Congress's intent. See id. Neither the Sims nor the Bryant court considered the validity of the early right-to-sue regulation in light of § 2000e-5(b), as did the Martini court.

This court finds Martini unpersuasive. The Martini court found that Congress unambiguously intended for the 180-day period to function not just as a deadline for the EEOC to issue a right-to-sue notice, but also as a minimum waiting period within which the EEOC cannot issue a notice. See Martini, 178 F.3d at 1342 (citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-43 (1984)).[5] However, Congress's

_____

[5]The Martini court followed the Supreme Court's Chevron standard for judicial review of an agency's construction of a statute. See Martini, 178 F.3d at 1342. Under this standard,

intent regarding this matter is far from clear.  The plain statutory language does not reveal Congress's intent.  <u>See</u> <u>Martini</u>, 178 F.3d at 1342-45.  The legislative history shows that Congress both expressed a preference for discrimination charges to be resolved informally and intended claimants to have their complaints resolved quickly.  <u>See</u> <u>Figueira v. Black Entertainment Television, Inc.</u>, 944 F. Supp. 299, 306 (S.D.N.Y. 1996).

Because of the EEOC's inability to promptly investigate every charge it receives, these two goals are somewhat contradictory.  Congress struck a balance by ensuring that claimants must wait no more than 180 days after filing a charge before proceeding to court.  <u>See</u> <u>Sims</u>, 22 F.3d at 1063.  The EEOC's early right-to-sue regulation, allowing claimants to proceed before 180 days have passed, furthers Congress's goal of avoiding unnecessary delay in resolving disputes.  <u>See</u> <u>id.</u> ("[W]e do not think Congress intended to force victims of discrimination to undergo further delay when the [EEOC] has determined such delay to be unnecessary." (quoting <u>Rolark v. University of</u>

the court first considers whether Congressional intent is unambiguous in the plain language of the statute or the legislative history.  <u>See</u> <u>Chevron</u>, 467 U.S. at 842-43.  If the court finds Congress's intent to be ambiguous, the agency's interpretation is entitled to deference and is valid as long as it is a permissible reading of the statute.  <u>See</u> <u>id.</u> at 843.

Chicago Hosps., 688 F. Supp. 401, 404 (N.D. Ill. 1988))).

Moreover, the regulation does not interfere with Congress's mandate that the EEOC investigate charges any more than the 180-day deadline does. It merely permits the EEOC to make an earlier determination that it will not be able to investigate a particular claim within 180 days. "While it is clear that the EEOC must investigate, it is not clear that it must spend at least 180 days to do so." Berry v. Delta Air Lines, __ F. Supp. 2d __, 1999 WL 1115760, at *2 (N.D. Ill. Dec. 1, 1999). Therefore, the EEOC's early right-to-sue notice regulation does not appear to contradict Congressional intent, to the extent Congressional intent can be discerned.

In light of the deference due an administrative agency's interpretation of statutes, the court finds the early right-to-sue regulation, 29 C.F.R. § 1601.28(a)(2), to be a permissible construction of 42 U.S.C. § 2000e-5(f)(1) and therefore valid. See Chevron, 467 U.S. at 843. The regulation reasonably allows the EEOC to exercise its expert judgment in determining which charges are unlikely to be processed within 180 days.[6] See

_____

[6]The Martini court was concerned that the EEOC could not have properly assessed the probability of resolving that dispute within 180 days because the agency issued a right-to-sue notice only 21 days after the charge was filed. See Martini, 178 F.3d at 1346. In contrast, the EEOC issued Fernandes a right-to-sue

11

Berry, 1999 WL 1115760, at *2; Figueira, 944 F. Supp. at 306.
"In light of the EEOC's expertise in administering the statute,
this is a permissible interpretation of its obligations under
Title VII." Berry, 1999 WL 1115760, at *2.

Furthermore, the court "cannot in good conscience interpret
the 180-day requirement to mean that Plaintiff's file must return
to the EEOC for further inquiry--merely because of a statutory
interpretation that penalizes the Plaintiff for acting in
compliance with Title VII." Connor v. WTI, 67 F. Supp. 2d 690,
697 (S.D. Tex. 1999). For all of these reasons, the court finds
that Fernandes's lawsuit is timely.

B.    Sufficiency of Title VII Claim

Sexual harassment constitutes unlawful discrimination on the
basis of sex under Title VII. See Meritor Sav. Bank v. Vinson,
477 U.S. 57, 66 (1986); Provencher v. CVS Pharmacy, 145 F.3d 5,
13 (1st Cir. 1998). Maintaining a claim of hostile work
environment "requires a showing of severe or pervasive conduct,"
such that it constitutes a change in the terms and conditions of
employment. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742

_____

notice approximately 92 days after receiving her charge,
increasing the likelihood that the EEOC accurately determined the
probability of conciliation.

(1998); see also Meritor, 477 U.S. at 67.  The phrase "terms and conditions of employment" is not limited to the meaning of these words in a contractual sense, and may apply where an abusive working environment is created.  See Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998)).  The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  Faragher, 524 U.S. at 775 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993)).  In deciding whether harassment is actionable under Title VII, the court must consider the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id. at 787-88 (quoting Harris, 510 U.S. at 23); see also Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 540 (1st Cir. 1995) (applying Title VII analysis in Title IX context).

The facts alleged in Fernandes's complaint outline a work environment where the terms and conditions of employment were changed as a result of Bergeron's conduct.  His treatment of Fernandes and other employees at the restaurant indicates that

13

his behavior pervaded the workplace and altered the entire work environment. Because Fernandes had to work closely with Bergeron, she was directly exposed to his behavior every day at work. Fernandes was subjected to crude comments of an overtly sexual nature, comments which reasonable people certainly could consider offensive, and Fernandes alleges that she was seriously offended by Bergeron's conduct. Therefore, taking the facts contained in Fernandes's complaint as true, the court finds that Fernandes has alleged sufficient facts to survive a motion to dismiss.

Furthermore, Fernandes has pled facts in her complaint pertaining to retaliatory discharge. As the court discusses below, although Fernandes has pled these facts in the context of a wrongful discharge claim, Title VII precludes Fernandes from asserting a common law claim for wrongful discharge. See Smith v. F.W. Morse & Co., 76 F.3d 413, 429 (1st Cir. 1996). Therefore, the court analyzes these facts as part of Fernandes's claim under Title VII.

To allege a claim of retaliatory discharge under Title VII, Fernandes must allege specific facts suggesting that "(1) she engaged in a protected activity as an employee, (2) she was subsequently discharged from employment, and (3) there was a causal connection between the protected activity and the

14

discharge." Hoeppner v. Crotched Mountain Rehabilitation Ctr., Inc., 31 F.3d 9, 14 (1st Cir. 1994). Reporting sexual harassment is a protected activity under Title VII. See id. (citing Morgan v. Massachusetts Gen. Hosp., 901 F.2d 186, 194 (1st Cir.1990)). Taking the facts in Fernandes's complaint as true as set forth earlier in this opinion, and indulging all reasonable inferences in her favor, the court can infer that Fernandes reported the sexual harassment she experienced to the defendants and that she was subsequently discharged as a result of her report.

For these reasons, Fernandes's allegations satisfy the minimal pleading requirements to state a Title VII claim of discrimination based on gender including sexual harassment.


C. Individual Liability

The individual defendants have moved to dismiss Fernandes's Title VII claims against them in their individual capacities. However, Fernandes states that she has not sued any of the defendants in their individual capacities under Title VII and that statement will be considered a binding waiver of such claims, if any exist.


II. New Hampshire's Law Against Discrimination

Fernandes does not object to dismissal of her claims against

all defendants under New Hampshire's Law Against Discrimination, see N.H. Rev. St. Ann. 354-A, because the statute does not provide a private cause of action. See Preyer v. Dartmouth College, 968 F. Supp. 20, 26 (D.N.H. 1997). Accordingly, the court dismisses these claims.

III. Negligent Infliction of Emotional Distress

The defendants argue that Fernandes's claims of infliction of emotional distress are barred by New Hampshire's worker's compensation statute. See N.H. Rev. St. Ann. § ("RSA") 281-A:8. This court has repeatedly held that this statute precludes an employee from pursuing common law claims for negligent torts against her employer. See, e.g., Holland v. Chubb Am. Serv. Corp., 944 F. Supp. 103, 105 (D.N.H. 1996); Miller v. CBC Cos., 908 F. Supp. 1054, 1068 (D.N.H. 1995). The statute also precludes claims against a co-employee for negligent torts. See Thompson v. Forest, 136 N.H. 215, 219 (1992).

Fernandes argues that the injuries she suffered fall outside the scope of injuries covered by the worker's compensation statute. She contends that sexual harassment is not the type of injury typically associated with working in a restaurant, that her employment did not create the risk of harassment, and the harassment did not take place in the performance of employment-related activity. Fernandes bases her argument on the standard applied in Appeal of Estate of Balamotis, 141 N.H. 456, 458 (1996), a standard first developed in Murphy v. Town of Atkinson, 128 N.H. 641, 645-46 (1986).[7] However, this standard applies to

_____

[7]To determine whether peripheral or ancillary activities are within the scope of employment, a plaintiff

17

plaintiffs who are injured "while engaged in peripheral or ancillary activities, [such as] recreational or social activities." Balamotis, 141 N.H. at 458; see also Murphy, 128 N.H. at 645. In contrast, Fernandes sustained the bulk of her alleged injuries on the employer's premises, during work hours, while she was performing her job duties. Although she claims she received some of her injuries at a party, the party was a corporate-sponsored holiday party for restaurant employees. The official nature of a company holiday party makes sexual harassment at the party a risk created by employment, even if the party is held off company premises.[8] Cf. Appeal of Cooper, 141 N.H. 184, 187 (1996) (discussing significance of corporate sponsorship of peripheral event). Therefore, the court finds

---

> must prove (1) that the injury arose out of employment
> by demonstrating that it resulted from a risk created
> by the employment; and (2) that the injury arose in the
> course of employment by demonstrating that (A) it
> occurred within the boundaries of time and space
> created by the terms of employment, and (B) that it
> occurred in the performance of an activity related to
> employment, which may include a personal activity if
> reasonably expected and not forbidden, or an activity
> of mutual benefit to employer and employee.

Murphy, 128 N.H. at 645-46.

[8]It is not clear from the complaint whether the holiday party took place on the premises of Lou's Restaurant.

18

Fernandes's argument unpersuasive.

Fernandes also argues that, as a matter of public policy, sexual harassment claims should not be subject to the exclusivity provisions of state worker's compensation statutes. As this jurisdiction does not recognize such an exception to New Hampshire's worker's compensation statute, the court rejects this argument. Therefore, the court dismisses Fernandes's claims of negligent infliction of emotional distress.

IV. <u>Intentional Infliction of Emotional Distress</u>

This court has repeatedly and consistently ruled that claims of intentional tort against an employer are barred by the exclusivity provision of the New Hampshire worker's compensation statute, RSA 281-A:8, I. <u>See, e.g.</u>, <u>Holland</u>, 944 F. Supp. at 105; <u>Miller</u>, 908 F. Supp. at 1068. Therefore, Fernandes's claims of intentional infliction of emotional distress are barred against TPD and the Frieds.

However, the statute does allow plaintiffs to proceed with claims of intentional tort against co-employees. <u>See</u> RSA 281-A:8, I; <u>Young v. Conductron Corp.</u>, 899 F. Supp. 39, 41 (D.N.H. 1995) (citing <u>Thompson</u>, 136 N.H. at 219). Therefore, RSA 281-A:8 does not preclude Fernandes's claim of intentional infliction of emotional distress against Bergeron. Bergeron argues that

Fernandes's allegations fail to state a claim because his conduct does not rise to the requisite level of outrageousness.

To maintain a claim of intentional infliction of emotional distress, Fernandes must allege sufficient facts to infer that Bergeron intentionally or recklessly caused her severe emotional distress through his extreme and outrageous conduct. See Miller v. CBC Cos., 908 F. Supp. 1054, 1067 (D.N.H. 1995) (citing Morancy v. Morancy, 134 N.H. 493, 495-96 (1991)). New Hampshire law follows the definition of outrageous conduct found in the Restatement (Second) of Torts. See Godfrey v. Perkin-Elmer Corp., 794 F. Supp. 1179, 1188 (D.N.H. 1992); Morancy, 134 N.H. at 495-96. According to the Restatement, the offending conduct should be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Godfrey, 794 F. Supp. at 1189 (quoting Restatement (Second) of Torts § 46, cmt. d (1965)).

Fernandes alleges that she was required to work closely with Bergeron as his assistant and that Bergeron intentionally abused this arrangement by subjecting her to sexually offensive, demeaning and inappropriate comments on a daily basis. See Duguay v. Androscoggin Valley Hosp., 1996 WL 157191, at *4 (D.N.H. 1996). She asserts that after complaining to Bergeron

20

about his behavior, he only responded with more offensive conduct. Bergeron's persistent statements exceed the "mere indignities, annoyances, or petty oppressions that one may expect to encounter in one's daily life." Godfrey, 794 F. Supp. at 1189. Such comments made "regularly and persistently . . . may also indicate the 'abuse by the defendant of some relation or position which gives him actual or apparent power to damage the plaintiff's interests.'" Miller, 908 F. Supp. at 1068 (quoting W. Page Keeton et al., Prosser and Keeton on Torts § 12, at 61 (5th ed. 1984)). The court rules that Fernandes's allegations are sufficient to support a claim for intentional infliction of emotional distress.

V.    Wrongful Discharge

Finally, Fernandes attempts to seek redress for her retaliatory discharge under the common law remedy for wrongful discharge. A plaintiff may not seek a common law remedy for wrongful termination under New Hampshire law where the same claim is addressed by a statutory cause of action such as Title VII. See Smith v. F.W. Morse & Co., 76 F.3d 413, 429 (1st Cir. 1996) (discussing Wenners v. Great State Beverages, 140 N.H. 100, 103 (1995)); Cooper v. Thomson Newspapers, Inc., 6 F. Supp. 2d 109, 115 (D.N.H. 1998) (same). Therefore, the court dismisses

21

Fernandes's common law claim of wrongful discharge.  Since all other grounds for a wrongful termination claim in this case are precluded, the court construes the claim as one for retaliatory discharge in violation of Title VII, as discussed above.

## Conclusion

For the foregoing reasons, the motion of defendants TPD and Toby and Pattie Fried to dismiss (document no. 5) is denied as to the Title VII claim (Count I), but is granted as to the claim under New Hampshire's Law Against Discrimination (Count II) and the claims of intentional infliction of emotional distress (Count III), negligent infliction of emotional distress (Count IV), and wrongful discharge (Count V).  Defendant Bergeron's motion to dismiss (document no. 8) is denied as to the Title VII claim (Count I) and the claim for intentional infliction of emotional distress (Count III), but is granted as to the claim under New Hampshire's Law Against Discrimination (Count II) and the claim for negligent infliction of emotional distress (Count IV).  Any claims that may exist under Title VII against the defendants individually are deemed waived.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

January 7, 2000
cc:  Karen J. Borgstrom, Esquire
     David W. Johnston, Esquire
     Robin C. Curtiss, Esquire