Logue v. Reliance Standard Life        CV-01-264-B    06/04/02
                UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE


Dorothy Logue

        v.                              Civil No. 01-264-B
                                        Opinion No. 2002 DNH 110
Reliance Standard Life
Insurance Co.



                    MEMORANDUM AND ORDER

        Dorothy Logue brings this action against Reliance Standard

Life Insurance Company to recover benefits under an ERISA-

regulated disability insurance plan.  The parties have filed

cross-motions for summary judgment.  For the reasons set forth

below, I grant Logue's motion and deny Reliance's cross-motion.



                    I.   BACKGROUND

A.   The Injury

        Logue is a 59 year-old woman with an associate degree in

nursing.  She worked as a Discharge Planning Coordinator at

Frisbie Memorial Hospital from October 1, 1990 until September 9,

2000.  A discharge planner must be able to think clearly and

interact with patients and hospital staff while coping with a moderate amount of stress. The job's only significant physical requirement is an ability to walk or stand for much of the day.

Logue has suffered from fibromyalgia[1] since 1997. Although she experienced constant pain and regularly took pain medication, a muscle relaxant, and anti-depressant medication, she was able to work regularly until September 9, 2000, when she suffered a back injury while assisting her disabled mother.

Logue initially sought treatment for her injury on September 13, 2000. An MRI taken the next day revealed a "mild disc bulge and facet arthrosis" at L4-L5 and "mild facet arthrosis" at L5-S1 without "disc herination, spinal stenosis or forminial narrowing." Her rheumatologist, Dr. John Shearman, described the MRI as "relatively normal." Logue saw Dr. Shearman again on October 10, November 9, and December 12, 2000. Dr. Shearman's notes state that Logue continued to complain of significant pain but that she believed that her condition was slowly improving.

---

[1] Fibromyalgia is characterized by chronic pain in the muscles, tendons, and joints throughout the body. Diagnostic criteria for the condition developed by the American College of Rheumatology also require that the patient experience pain upon palpation of at least 11 of 18 designated "trigger points." See Attorney's Textbook of Medicine, ¶ 25.34 (1990).

-2-

He instructed her to continue taking her medication and apply ice and wet heat to the affected area.

Dr. Shearman completed a Physician's Statement for Logue on December 12, 2000. He diagnosed her condition as a "bulging disc L4, L5," secondary to fibromyalgia. Dr. Shearman asserted that Logue could not drive or sit and could stand and walk for only 1-3 hours per day. He noted, however, that her condition did not limit her ability to perform the mental component of her work. He also stated that she was capable of performing light duty work during an 8-hour day.

On January 2, 2001, Logue told a Reliance employee that she "feels a little bit better than previously." She also admitted that she was not receiving physical therapy and that Dr. Shearman had told her "do normal activity cautiously." She claimed, however, that she had difficulty driving and sitting and that she could walk for only up to one hour with rest periods during an eight-hour day.

Logue completed a pain questionnaire on March 9, 2001. She asserted that her fibromyalgia had been getting worse each year, and that her condition deteriorated significantly after she injured her back. She claimed that she had a limited ability to

walk, she could sit or drive for no more than 20 minutes, and she had difficulty concentrating. She stated that she was able to cook, "tidy" her house but not vacuum, engage in light shopping and take care of her personal needs by pacing herself and resting frequently.

Dr. Shearman saw Logue again on April 5, 2001. A few days later, he completed a Fibromyalgia Residual Functional Capacity Questionnaire describing Logue's condition. He noted that Logue suffered from "chronic-frequent episodes of severe pain." He stated that her pain constantly interfered with her attention and concentration and that she was incapable of performing even low stress jobs. He claimed that she was able to stand for no more than five minutes at a time and for less than two hours total during the work day.

## B.    The Policy

Logue is a beneficiary of a group long-term disability policy issued by Reliance.[2] The policy divides benefit

_____

[2] The parties treat Reliance as the administrator of Logue's ERISA-regulated long-term disability plan and the policy as the plan. Further, Reliance does not challenge Logue's decision to sue it rather than the plan. Accordingly, I will assume that Reliance is the plan administrator and that Logue is entitled to bring her claim against Reliance.

eligibility determinations into two phases. Only the first phase, which covers the first 24 months following a 90-day elimination period, is relevant to this action. During the elimination period, and for the next 24 months after the elimination period is completed, a beneficiary is deemed to be "totally disabled" if, "as a result of injury or sickness," the "Insured cannot perform the material duties of his/her regular occupation." The policy requires a beneficiary to "submit[] satisfactory proof of total disability to us" to recover benefits under the policy.

## C.   The Claim

Logue formally applied for benefits under the policy on December 18, 2000. In a February 21, 2001 letter denying Logue's claim, Reliance explained that she had failed to produce satisfactory evidence of disability because: (1) her MRI revealed only a "mild disc bulge and facet arthrosis" at L4-5 and "mild facet arthrosis" at L5-S1 without "disc herniation, spinal stenosis or forminial narrowing;" (2) Dr. Shearman's December 2, 2000 physical capacity report stated that Logue was capable of performing light duty work; (3) Dr. Shearman's notes indicated that while Logue continued to experience pain, her condition

-5-

improved throughout the elimination period; and (4) Logue had failed to produce any objective medical evidence to support her claim that she could no longer work.

Logue retained counsel and appealed the denial of her claim on March 29, 2001. Her attorney asserted that Logue was disabled because "fibromyalgia, combined with the effects of [her back injury] upon her health have seriously decreased her ability to perform even simple activities of daily living." Logue included a copy of her March 9, 2001 pain questionnaire with her appeal. On April 9, 2001, Logue supplemented her claim by submitting a formal job description and Dr. Shearman's April 14, 2001 Fibromyalgia Residual Functional Capacity Questionnaire. Reliance denied Logue's appeal on May 11, 2001. On June 6, 2001, Reliance also rejected Logue's request for a second appeal which she based in part on the fact that the Social Security Adminis- tration had recently granted her application for disability benefits. In a letter explaining its decision, Reliance stated that "while we consider the determinations of Social Security and any other insurance policy, they have no bearing on our decision as to whether Ms. Logue meets the determination of 'total disability' contained in [her] policy."

-6-

## II.  STANDARD OF REVIEW

This case presents a threshold question as to whether I should review the denial of Logue's claim *de novo* or under the familiar "abuse of discretion standard."  In <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101 (1989), the Supreme Court held that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under the *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  <u>Id.</u> at 115.  This requirement has been given teeth by the First Circuit, which mandates the use of the *de novo* standard unless the plan "<u>clearly</u> grant[s] discretionary authority to the administrator."  <u>Terry v. Bayer Corp.</u>, 145 F.3d 28, 37 (1st Cir. 1998) (quoting <u>Rodriguez-Abreu v. Chase Manhattan Bank, N.A.</u>, 986 F.2d 580, 583 (1st Cir. 1993)) (emphasis added).

Reliance requires an applicant to "submit[] satisfactory proof of total disability to us" to trigger an entitlement to benefits.  It argues that this policy language gives it discretionary authority to make benefit determinations because a "satisfactory proof" requirement permits it to deny claims that

in its subjective judgment are not supported by sufficient evidence.  While this interpretation is plausible, it is at least equally likely that a reasonable beneficiary would understand the policy to require Reliance to grant an application for benefits if the beneficiary produces enough evidence of disability to satisfy a reasonable insurer.  If the policy is given this interpretation, it does not vest Reliance with discretion to deny properly supported claims.  Given this ambiguity, I agree with those courts that have concluded that a "satisfactory proof" requirement does not clearly confer discretionary authority on a plan administrator.  See Herzberger v. Standard Ins. Co., 205 F.3d 327, 332 (7th Cir. 2000); Sandy v. Reliance Standard Life Ins. Co., 222 F.3d 1202, 1207-08 (9th Cir. 2000); Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 251-52 (2d Cir. 1999); Rzasa v. Reliance Standard Life Ins. Co., 2000 D.N.H. 75, at *4 (D.N.H. March 21, 2000); but see Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555-58 (6th Cir. 1998).  Thus, I review Reliance's denial of Logue's claim using the de novo standard.

## III.  DISCUSSION

It is often difficult to determine whether a person is

disabled when they suffer from fibromyalgia. This is so because, as the Attorney's Textbook of Medicine notes, "there is, at present, no way to objectively measure impairment in a patient with fibromyalgia." Attorney's Textbook of Medicine, ¶ 25.70; see also Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) (fibromyalgia's "cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective"). Reliance could have avoided this difficulty either by specifically excluding coverage for fibromyalgia claims or by covering only claims that result from illnesses that can be diagnosed using objective medical evidence. Instead, it has elected to cover disability claims that result from any "injury or sickness." Thus, it cannot reject Logue's claim simply because her alleged impairment cannot be objectively measured. See Mitchell v. Eastman Kodak Co., 113 F.3d 433, 443 (3d Cir. 1997)(plan administrator may not reject claim based solely on lack of objective medical evidence where plan does not require that claims be supported by such evidence); House v. The Paul Revere Ins. Co., 241 F.3d 1045, 1048 (8th Cir. 2001) (same). Accordingly, I will review Logue's claim by considering all of the relevant evidence rather than rejecting it out of hand

because it is not supported by objective medical evidence.

I have no doubt that Logue suffers from fibromyalgia because Dr. Shearman diagnosed the condition long before Logue attempted to obtain disability benefits, she has been taking prescription medication for the condition for several years, and Reliance has not produced any evidence that would call Dr. Shearman's diagnosis into question. Reliance nevertheless argues that Logue is not entitled to disability benefits because (1) the fact that she was able to work with fibromyalgia for several years demonstrates that her condition was not disabling; (2) her MRI does not support her claim; and (3) Dr. Shearman's statements that Logue was capable of engaging in light duty work and should cautiously resume normal activities suggest that she was capable of returning to work. I find these arguments unpersuasive.

The fact that Logue was able to work with fibromyalgia for several years does not necessarily undermine her claim that her condition deteriorated after she injured her back to the point that she could no longer work. Nor is her MRI dispositive. Dr. Shearman determined that Logue's impairments were caused by her back injury <u>in</u> <u>combination</u> <u>with</u> fibromyalgia. Reliance has failed to produce any medical evidence challenging this

-10-

determination. Without such evidence, it cannot deny Logue's claim simply because neither Logue's back injury nor her fibromyalgia were, by themselves, sufficiently severe to prevent her from returning to work.

Dr. Shearman's statements that Logue was capable of performing light duty work and that she should cautiously resume normal activities also fail to undermine Logue's claim.[3] Dr. Shearman has consistently endorsed Logue's contention that she was incapable of standing and walking for more than two hours during an 8 hour work day after she injured her back. I can find nothing in Dr. Shearman's office notes, or in Logue's description of her condition which casts doubt on her contention. Nor has Reliance produced any medical evidence of its own on this issue. Since it is undisputed that a discharge planner must be able to walk and stand for much of the work day, Logue has established that her fibromyalgia and back injury caused her to be unable to

---

[3] Reliance attached significance to the fact that the only treatment that Dr. Sherman prescribed for Logue's back injury was to continue taking her medications and apply ice and wet heat to the area of her injury. It has failed to explain, however, why this treatment regime is inconsistent with Logue's claim that her illness and injury prevented her from being able to return to work.

perform all of the material duties of her job as a discharge planner.  Accordingly, I grant her motion for summary judgment (doc. no. 9) and deny Reliance's cross-motion (doc. no. 11).

SO ORDERED.


_____
Paul Barbadoro
Chief Judge

June 4, 2002

cc:  Vicki Roundy, Esq.
     Kevin Devine, Esq.